**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
     By:   Jack Kolpen, Esq
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
T: (609) 896-3600
F: (609) 896-1469
Attorneys for Plaintiff Healey Alternative
Investment Partnership

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HEALEY ALTERNATIVE INVESTMENT PARTNERSHIP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 10-01567(RMB) (KMW) |
| | : | |
| ROYAL BANK OF CANADA and RBC DOMINION SECURITIES CORPORATION a/k/a RBC CAPITAL MARKETS CORPORATION, | : | MOTION DATE:  JULY 19, 2010 |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| -----------------------------------------------------x | | |

### PLAINTIFF'S MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

A.   Facts Alleged in Complaint and Documents Integral to Complaint ..................... 3

B.   Disputed Facts and Documents Which Should Not Be Considered on this Motion to Dismiss. .......................................................................... 10

ARGUMENT ..................................................................................................... 13

I.   Standard of Review on a Motion to Dismiss ....................................... 13

II.   The Complaint States a Claim for Breach of Contract ........................ 15

    A.   The Facts Alleged in the Complaint Clearly State a Claim for Breach of Contract ................................................................ 15

    B.   The Motion to Dismiss Suggests Ambiguities in the Agreement and Issues of Fact Which Preclude 12(b)(6) Dismissal ......................... 17

        1.   To the Extent that the Agreement Provides for the Timing and Method of Payments, The Agreement is Ambiguous........... 17

        2.   To the Extent the Agreement Does Not Expressly Provide a Date Certain for Payment, Defendants Have Breached the Implied Duty of Good Faith and Fair Dealing.......................... 20

        3.   When Plaintiff Provided Notice of Termination is an Issue of Fact Precluding 12(b)(6) Dismissal ....................... 23

        4.   Whether Defendants Improperly Invested Plaintiff's Money in Side Pockets is Another Issue of Fact Precluding 12(b)(6) Dismissal.................................................... 24

        5.   Whether Plaintiff is Entitled to the Amounts Listed in RBC's Monthly Valuation Reports is Another Issue of Fact. ...................................................................... 25

III.   Plaintiff Has Stated a Claim for Breach of Fiduciary Duty................. 26

IV.   Plaintiff Has Stated a Claim for Fraud .............................................. 31

V.   New York Law Allows Plaintiff's "Quasi-Contractual" Claims ........................ 37

i

CONCLUSION ............................................................................................................ 40

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

67 Wall Street Co. v. Franklin National Bank,
        333 N.E.2d 184 (N.Y. 1975) ................................................................ 19

ARIS Multi-Strategy Offshore Fund v. Devaney,
        No. 602231/08, 2009 WL 5851192 (N.Y. Sup. Ct Dec. 14, 2009) ................................. 30

In re Adams Golf, Inc. Sec. Litigation,
        381 F.3d 267  (3d Cir. 2004) ............................................................ 37

Bank of New York v. Asati, Inc.,
        184 A.D.2d 443 (N.Y. 1992) ............................................................ 33

Bell Atlantic Corp. v. Twombly,
        550 U.S. 544 (2007) .................................................................. 14

Biovail Corp. International v. Aktiengesellschaft,
        49 F. Supp. 2d 750 (D.N.J. 1999) ...................................................... 18

Bullmore v. Ernst & Young Cayman  Is.,
        45 A.D.3d 461, 463 (N.Y. App. Div. 2007) ..........................................27, 38

Dalton v. Education Testing Serv.,
        87 N.Y.2d 384 (1995) ................................................................ 21

Danaan Realty Corp. v. Harris,
        157 N.E.2d 597 (N.Y. 1959) ........................................................... 30

Dayan v. Witkoff,
        No. 109234/08, 2009 WL. 994791 (N.Y. Sup. Ct. April 6, 2009) ..........................25, 38

EP Medsystems, Inc. v. Echocath, Inc.,
        235 F.3d 865 (3d Cir. 2000) .......................................................... 36

In re Express Scripts, Inc,
        522 F. Supp.2d 1132 (E.D.Mo. 2007) ..................................................27-28

F&K Supply Inc. v. Willowbrook Development Co.,
        288 A.D.2d 713 (N.Y. App. Div. 2001) ................................................ 39

Gray & Associates, LLC v. Speltz & Weis LLC,
        No. 150446/2007, 2009 WL. 416138 (N.Y. Sup. Ct Feb. 2, 2009) .........................27, 38

Joseph Sternberg, Inc. v. Walber 36th Street Associates,
    187 A.D.2d 225 (N.Y. App. Div. 1993) ................................................................. 37-38

In re K-Dur Antitrust Litigation,
    338 F. Supp. 2d 517 (D.N.J. 2004) ............................................................................. 39

Lipsky v. Com. United Corp.,
    551 F.2d 887 (2d Cir. 1976) ....................................................................................... 18

Mallis v. Bankers Trust Co.,
    615 F.2d 68 (2d Cir. 1980) ......................................................................................... 35

Mandelblatt v. Devon Stores, Inc.,
    132 A.D.2d 162 (N.Y. App. Div. 1987) ...................................................................... 27

Maniscalco v. Brother International Corp.,
    627 F. Supp. 2d 494 (D.N.J. 2009) ..................................................................... 13-14, 39

McCullough v. City of Atlantic City,
    137 F. Supp. 2d 557 (D.N.J. 2001) ............................................................................ 15

Mercedes-Benz USA, LLC v. ATX Group, Inc.,
    Civ. No. 08-3529, 2009 WL. 2255727 (D.N.J. July 27, 2009) ........................... 14, 15, 18

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chipetine,
    221 A.D.2d 284 (N.Y. App. Div. 1995) ............................................................. 21, 22, 32

National Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    89 Fed. App'x 287, 294-95 (2d Cir. 2004) .............................................................. 30-31

Northern Valley Partners, LLC v. Jenkins,
    No. 101957/08, 2010 WL. 1433096 (N.Y. Sup. Ct. April 6, 2010) ...................... 31, 38-39

OnBank & Trust Co. v. Federal Deposit Insurance Corp.,
    967 F. Supp. 81 (W.D.N.Y. 1997) ...................................................................... 18, 19, 34, 35

Outback/Empire I, Ltd. Partnership v. Kamitis Inc.,
    35 A.D.3d 563 (N.Y. App. Div. 2006) ...................................................................... 21

P.T. Bank Central Asia v. ABM Amro Bank N.V.,
    301 A.D.2d 373 (N.Y. App. Div. 2003) ........................................................... 30, 31-32, 33

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008) ....................................................................................... 14

Sally Lou Fashions Corp. v. Camhe-Marcille,
  300 A.D.2d 224 (N.Y. App. Div. 2002)..................................................... 27

Sands v. McConnick,
  502 F.3d 263 (3d Cir. 2007) ......................................................... 2, 11

Spirit Locker, Inc. v. Evo Direct, LLC,
  No. 09-CV-1582, 2010 WL. 1006561 (E.D.N.Y. March 19, 2010)............................... 38

State v. Home Indemnity Co.,
  486 N.E.2d 827 (N.Y. 1985) ......................................................... 18

Swersky v. Dreyer and Traub,
  219 A.D.2d 321 (N.Y. App. Div. 1996).................................................32, 33

Tahini Investment, Ltd. v. Bobrowski,
  99 A.D.2d 489 (N.Y. App. Div. 1984)..................................................32, 33

Tedeschi v. Wagner College,
  404 N.E.2d 1302 (N.Y. 1980) ......................................................... 21

Thompson Design Group v. 1101-1125 Hudson Street LLC,
  Civ. No. 05-2697, 2008 WL 4717466 (D.N.J. Aug. 29, 2008)................................... 18

Wiscovitch Associates, Ltd. v. Philip Morris Cos., Inc.,
  193 A.D.2d 542 (N.Y. App. Div. 1993)..................................................... 32

Zuccarini v. Ziff-Davis Media, Inc.,
  306 A.D.2d 404 (N.Y. App. Div. 2003)..................................................... 38

**STATUTES**

15 U.S.C. § 78j(b) ......................................................................... 10

Fed. R. Civ. P. 12(d)..............................................................1, 2, 11, 14

## PRELIMINARY STATEMENT

Plaintiff Healey Alternative Investment Partnership ("Plaintiff" or "Healey") submits this Memorandum of Law in Opposition to the Motion to Dismiss by Defendants Royal Bank of Canada ("RBC") and RBC Dominion Securities Corporation, a/k/a RBC Capital Markets Corporation ("RBCD") (collectively, "Defendants"), dated May 24, 2010 ("Motion to Dismiss").  Through this action, Plaintiff seeks the return of monies being improperly held by Defendants.  Instead of addressing Plaintiff's Complaint, dated March 26, 2010, ("Complaint"), on its face, Defendants' Motion to Dismiss improperly raises multiple issues of material fact and directs the Court to purported extrinsic "evidence" as a basis to dismiss the Complaint.  Additionally, Defendants highlight the ambiguity of material terms in the contract at issue here.  Thus, Defendants' own motion renders dismissal of the Complaint impossible under the standard of review applicable to motions to dismiss.

To be clear, the Complaint withstands Defendants' improper evidentiary attacks.  Defendants have Plaintiffs' money and are both refusing to return it and refusing to calculate the amount due, both in derogation of the agreement between the parties.  Defendants cannot keep Plaintiffs' money indefinitely, as they seem to suggest.  The Complaint therefore alleges specific facts to support its well-pleaded claims for breach of contract (or, alternatively, unjust enrichment), breach of the

1

covenant of good faith and fair dealing, breach of fiduciary duty, negligence, securities fraud, common law fraud, and equitable accounting/ constructive trust. Thus, accepting the factual allegations in the Complaint as true and construing the Complaint in the light most favorable to Plaintiff, as required under Federal Rule of Civil Procedure 12(b)(6), the Complaint absolutely provides "a showing" of why Plaintiff is entitled to relief.  If the Court decides to consider the extraneous evidence presented by the Defendants, Plaintiff is entitled to discovery of various facts which are, at this time, solely in the possession of Defendants.  For all of these reasons, Defendants' Motion to Dismiss must be denied.

## STATEMENT OF FACTS

The facts relevant to this 12(b)(6) motion are those set forth in the Complaint, which must be accepted as true, and documents that are integral to and/or explicitly relied upon in the Complaint.  See Sands v. McConnick, 502 F.3d 263 (3d Cir. 2007).  Facts that cannot be considered on a motion to dismiss are facts and/or documents that are disputed and were improperly introduced by Defendants on their motion to dismiss.  Id.; FED. R. CIV. P. 12(d) (matters outside pleadings must be excluded by the court unless the motion is treated as one for summary judgment and the parties are given reasonable opportunity to present all the material pertinent to the motion).

**A.      Facts Alleged in Complaint and Documents Integral to Complaint**

On or about November 29, 2002, Healey invested $17.5 million with Defendants in a transaction in options and other financial derivatives, confirmed by a letter agreement dated November 29, 2002, entitled "Cash-Settled Equity Barrier Call Option" (the "Agreement").  (Compl. ¶ 8 and Exh. A).  The Agreement is on RBCD letterhead and was drafted by RBCD. (Compl. Exh. A).  Plaintiff later increased its initial investment of $17.5 million to a total of $22 million that Plaintiff paid to Defendants. (Compl. ¶ 12).

**1.  The Terms of the Agreement.**

The Agreement appoints RBCD as RBC's agent for "purposes of conducting on the Bank's behalf, a business in privately negotiated transactions in options and other financial derivative instruments."  (Compl. ¶ 10 and Exh. A at 1).  The Agreement states that RBC "duly authorized RBCD to market, structure, negotiate, document, price, execute and hedge transactions in over-the-counter financial derivative instruments."  (Id.).  The Agreement also names RBCD as Calculation Agent, as that term is defined in the 2000 ISDA Definitions and 1996 ISDA Equities Derivatives Definitions.  (Compl. ¶ 11 and Exh. A § 11 at 16; Exh. C § 4.14 at 7; Exh. D § 1.25 at 4).

Plaintiff's investment with Defendants was linked to the performance of a "Basket" comprised of certain Hedge Funds, Cash and/or Unallocated Amount (as detailed in Annex I to the Agreement). (Compl. ¶ 13 and Exh. A § 2 at 2). Under the Agreement, Defendants were permitted, but not required, to "hedge, in whole or in part, its risk arising hereunder or under other transactions with third parties by investing in securities, assets or other property (including Hedge Funds)…." (Compl. ¶ 14 and Exh. A § 11 at 15). Therefore, Defendants were not required to actually invest Plaintiff's money into each of the components of the Basket, but <u>were</u> required to compensate Plaintiff based upon the performance of each of the components of the Basket. (<u>Id</u>.).

Under Sections 7 and 9 of the Agreement, once Plaintiff initiated an "Elective Termination," Defendants were required to pay to Plaintiff a "Cash Settlement Amount" defined as "Final Option Value multiplied by Number of Options." (Compl. ¶ 16 and Exh. A § 7 at 8 and § 9 at 11). The Termination Date is defined as "Any Business Day prior to the Expiration Date as of which Buyer or Seller elects to terminate this Transaction …." (Compl. ¶ 16 and Exh. A § 7).

### 2. Plaintiff Terminates the Agreement.

Plaintiff's written notice, sent via email and acknowledged by Defendants on September 19, 2008, sets the Termination Date as September 19, 2008. (Compl. ¶ 18). Pursuant to Section 7 of the Agreement, upon the

Termination Date, Defendants are required to pay Plaintiff on the fifth Business Day after the Calculation Date of each month after September 19, 2008, an amount equal to the "portion of the Ending Basket Level for which Final Valuation Prices have been determined by the Calculation Agent to be in excess of the Strike Price (each, an 'Interim Cash Settlement Amount') for which payment previously has not been made, if any." (Id.).

The next Calculation Date after Healey's termination notice was September 30, 2008. Accordingly, Defendants were obligated to begin payments on October 7, 2008. However, Defendants failed to provide any payment to Defendants until nine months later, on July 1, 2009. (Compl. ¶ 24). To date, Plaintiff has received only $7,599,000 of the minimum of $27,906,960 that is due and owing to Plaintiff under the terms of the Agreement. Plaintiff is still owed over $20 million (exclusive of interest) under the terms of the Agreement. (Compl. ¶ 19).

### 3. Defendants Refuse Plaintiff Requests for Final Payment.

On January 13, 2010, after waiting more than a year for final payment, Plaintiff demanded payment of the remaining balance of the Cash Settlement Amount. (Compl. ¶ 41 and Exh. E). On January 26, 2010, in response to Healey's demand, Defendants claimed that the determinations needed for the Final Valuation Prices had "not been possible with respect to a number of components of the Basket due to their lack of liquidity." (Compl. ¶ 42 and Exh. G). Defendants

have not identified the components for which they are unable to make the necessary determinations or the basis for this statement.  (Compl. ¶ 42).

On March 5, 2010, Healey again demanded payment of the balance of the Cash Settlement Amount and a full accounting of that amount, along with access to all necessary data to conduct an independent audit.  (Compl. ¶ 43 and Exh. F). On March 18, 2010, Defendants again claimed that they are unable to determine a Final Valuation Price for a number of Hedge Funds due to the illiquidity of those funds.  (Compl. ¶ 44 and Exh. H).  Defendants claimed "absolute and sole discretion" to determine each Final Valuation Price.  (Id.).  Moreover, Defendants "currently estimated" that the Final Option Value is $11,000,426.  (Id.).  However, Defendants have provided no explanation for the basis of this estimate, nor have they provided any indication as to when they will conclusively determine the Final Option Value or when they will pay even their own stated amount due.  Defendants stated on March 18, 2010:  "the remaining amount due to Healey, once Final Valuation Prices have been determined, is, based on current estimated valuations, likely to be closer to $5.3 million …." (Id.)

In addition to indicating that the value of several Hedge Funds had declined to zero, Defendants indicated to Plaintiff that they had linked Plaintiff's investment to "side pockets."  Significantly, investments in "side pockets" were not called for under the Agreement or authorized by Plaintiff.  According to Defendants, the side

pocket values have become uncertain.  (Compl. ¶ 37).  Defendants also claimed

that certain hedge funds have "hold backs" on redemptions, and therefore the

values of the funds are unknown. (Id.).

### 4.  Determining the Cash Settlement Amount.

Under the Agreement, the Calculation Agent is bound to determine the

Final Option Value by calculating the Valuation Price for (1) each Hedge Fund, (2)

each non-cash distribution of a Hedge Fund, and (3) Cash and any Unallocated

Amount that exists in the Basket.  (Compl. ¶ 25 and Exh. A § 6 at 7).  For each

Hedge Fund, the Final Valuation Price is defined as the

> USD amount, as determined by the Calculation Agent, in its sole
> discretion, that actually would be received upon complete and final
> settlement of liquidation or redemption by a hypothetical beneficial
> owner thereof assuming such beneficial owner properly submitted a
> notice of full liquidation or redemption to such Hedge Fund on the
> Expiration Date with instructions to liquidate or redeem such Hedge
> Fund as soon as possible.
> (Compl. ¶ 26 and Exh. A § 6 at 7).

RBCD, as Calculation Agent, is required to make the determinations needed for

the Final Valuation Price "in good faith and in a commercially reasonable

manner."  (Compl. ¶ 28 and Exh. C § 4.14 at 7).

Under the Agreement, the total Cash Settlement Amount owed to Plaintiff is

the Final Option Value on September 19, 2008, which Defendants were bound in

good faith to determine based upon complete and final settlement of liquidation or

redemption by a hypothetical beneficial owner of the each Hedge Fund, assuming

such beneficial owner properly submitted a notice of full liquidation or redemption to such Hedge Fund on September 19, 2008, with instructions to liquidate or redeem such Hedge Fund as soon as possible.  (Compl. ¶ 35).

Defendants provided monthly Basket Reports showing the ending Basket Level on the Calculation Date of each month.  (Compl. ¶ 29).  Using Defendants' own monthly Basket Reports, without admitting to the accuracy of such reports, Defendants themselves calculated the Final Option Value to be $27,906,962.90 as of August 29, 2008.[1]  (Compl. ¶ 29).  August 29, 2008 was the last Calculation Date determination of the value of the Basket prior to Plaintiff's termination. (Compl. ¶ 29).  Thus, as reflected in Defendants' August 2008 Basket Report, which Defendants generated without providing any substantiation or accounting to Plaintiff, a Cash Settlement Amount of **$27,906,962.90** was owed to Plaintiff at the end of August 2008. (Compl. ¶ 30 and Exh. I).  Again, this $27,906,962.90 comes right from Defendants' statements.

Almost eighteen months after Plaintiff terminated the Agreement, Defendants have failed to explain why the calculations in their Valuation Report attached to the Complaint as Exhibit K do not accurately reflect the Final Option Value of the Basket as of the Termination Date, and have not provided any different determinations as to the Final Option Value to Plaintiff.  Defendants' own

---

[1] Plaintiff expressly reserves all rights should the amount owed to Plaintiff prove higher than the amount listed by Defendants.

documents demonstrate that their have been no significant changes in their

calculations.  Exhibit K is the cumulative monthly Valuation Report (updated by

RBC on March 22, 2010) that shows that the Basket Levels and Total Values, as of

each month's end from December 2002 through December 2008, have remained

virtually unchanged when compared to the monthly values in the Valuation Report

that was updated by RBC on March 2, 2009.  (Compl. ¶ 35 and Exhibits K and O).

In fact, the Basket Levels and Total Values in Exhibit K are exactly the same as the

Valuation Report, updated by RBC on January 9, 2010, attached as Exhibit P to the

Complaint.  (Compl. ¶ 35 and Exhibits K and P).

        Defendants have refused requests from Plaintiff for information regarding

the valuations of the Hedge Funds contained in the Basket.  Defendants have also

refused to provide financial statements on the Hedge Funds contained in the

Basket.  Instead, Defendants have instructed Plaintiff to contact the representatives

of the Hedge Funds contained in the Basket directly, knowing that those

representatives would likely refuse to provide that information because Plaintiff is

not the actual investor in those funds.  (Compl. ¶ 38).

         Regardless of whether Defendants actually invested in the Hedge Funds in

the Basket, and regardless of whether money is being "heldback" by the Hedge

Funds, under the terms of Section 6 of the Agreement, Defendants must repay

Plaintiff's monies now due and owing to Plaintiff. (Compl. ¶ 40).  It simply does not matter if Defendants have themselves been paid back as an actual investor.

Repeating all of the foregoing specific facts, the Complaint clearly sets forth the elements for each of the following claims:  Breach of Contract (Compl. ¶¶ 46-60); Breach of Fiduciary Duty (Compl. ¶¶ 61-75); Unjust Enrichment, Pled in the Alternative (Compl. ¶¶ 76-83); Breach of the Covenant of Good Faith and Fair Dealing (Compl. ¶¶ 84-94); Equitable Accounting and Constructive Trust (Compl. ¶¶ 95-102); Negligence (Compl. ¶¶ 103-107); Securities Fraud in Violation of 15 U.S.C. § 78j(b) (Compl. ¶¶ 108-115); and Common Law Fraud (Compl. ¶¶ 116-122).  Each of the claims is well-pleaded, provides notice to Defendants of the exact nature of Plaintiff's claims, and is based upon detailed factual allegations.  In short, there is no basis for dismissal of any of the claims stated in the Complaint.

**B.     Disputed Facts and Documents Which Should Not Be Considered on this Motion to Dismiss.**

In support of the Motion to Dismiss, Defendants submit an Affidavit of Scott A. Resnik, Esq. ("Resnik Affidavit") which attaches several documents that are not integral to or relied upon in the Complaint, and whose relevancy and/or authenticity are absolutely disputed by Plaintiff.  Under Rule 12(d) of the Federal Rules of Civil Procedure, the documents should be excluded by the Court unless the motion is converted into one for summary judgment under Rule 56 and the

parties given a "reasonable opportunity to present all the material that is pertinent to the motion." At this early stage of the pleadings, without the benefit of discovery and with most of the relevant information in the hands of Defendants and unknown to Plaintiff, it would be unconscionable to convert Defendants' motion into one for summary judgment. Accordingly, the documents discussed below should not be considered by the Court.

**1. The Court Should Not Consider Exhibit C to the Resnik Affidavit.**

Exhibit C to the Resnik Affidavit is a document entitled "Termination of Cash-Settled Equity Barrier Call Option," dated June 15, 2009. This document was not referenced or relied upon in the Complaint because Plaintiff clearly alleges that its account was terminated by its September 19, 2008 email. (Compl. ¶ 18). Exhibit C is a document that Defendants drafted and insisted that Plaintiff sign before <u>any</u> monies would be released to Plaintiff. (<u>See</u> Affidavit of Ernie Nepa, dated June 24, 2010, ("Nepa Affidavit") ¶ 4)). The circumstances surrounding the signing of the document, and the implications of the document, are absolutely disputed by Plaintiff and are issues which should be explored during discovery. The document should therefore not be considered on this motion to dismiss. <u>See</u> <u>Sands v. McConnick</u>, 502 F.3d 263, 268 (3d Cir. 2007) ("Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record.").

**2. The Court Should Not Consider Exhibits F through J to the Resnik Affidavit.**

In addition, it is inappropriate for Defendants to submit various excerpts from private offering memoranda.  Plaintiff has never seen Exhibits G through J to the Resnik Affidavit, two of which <u>post-date</u> the March 29, 2006 purported Amendment that is attached to the Resnik Affidavit as Exhibit F.  (Nepa Affidavit ¶¶ 12-14).  Moreover, the relevance of Exhibit F is entirely questionable, since it is dated more than three years <u>after</u> the parties had executed their 2002 Agreement and more than three years <u>after</u> Plaintiff had given $22 million to Defendants to invest.  Defendants' belated attempt to wipe away any claims of reliance upon material omissions made in 2002 (Exhibit F to the Resnik Affidavit) has no relevance whatsoever to Defendants' material omissions when they entered their Agreement, or to the claims stated in the Complaint.

Exhibit G to the Resnik Affidavit is dated October 1, 2009, which <u>post-dates by more than three years</u> Plaintiff's supposed receipt and review discussed in the March 29, 2006 Amendment.  Moreover, Exhibit G <u>post-dates</u> Healey's September 19, 2008 termination of the Agreement and <u>post-dates</u> the Defendants' asserted termination date of June 15, 2009.  Exhibit G has never been viewed by Plaintiff. (Nepa Affidavit ¶ 12).

Exhibit H to the Resnik Affidavit, dated June 2007, also <u>post-dates</u> the March 29, 2006 Amendment and was never viewed by Plaintiff.  (Nepa Affidavit ¶

13).  While Exhibits I and J purport to be dated July 2002 and January 2002, respectively, Plaintiff does not recall ever receiving or reviewing Exhibits I or J. (Nepa Affidavit ¶ 14).  Moreover, even if Plaintiff <u>had</u> received those documents in connection with Exhibit F, which Defendants assert but Plaintiff disputes, Exhibit F tells us only that such receipt was in 2006 – <u>not in 2002 at the time Plaintiff invested with Defendants</u>.

Finally, Plaintiff has no idea whether Exhibits G through J are accurate or authentic, and no idea what text has been omitted from the excerpts attached to the Resnik Affidavit as Exhibits G through J.  Therefore, although the relevance and legitimacy of Exhibits F through J may be subject to discovery and possible evidentiary disputes, the documents should absolutely not be considered on this motion to dismiss.

<u>**ARGUMENT**</u>

**I.      Standard of Review on a Motion to Dismiss**

Defendants bring their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which allows for dismissal for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  On a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Maniscalco v.</u>

Brother Int'l Corp., 627 F. Supp.2d 494, 498 (D.N.J. 2009).  On a motion to

dismiss, "[t]he defendant bears the burden of showing that no claim has been

presented."  Mercedes-Benz USA, LLC v. ATX Group, Inc., Civ. No. 08-3529,

2009 WL 2255727, at *2 (D.N.J. July 27, 2009).

    While the United States Supreme Court recently delineated the pleading

standards under Rule 12(b)(6) in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007),

the Third Circuit has made it clear that the Twombly decision "neither demand[s] a

heightened pleading of specifics nor impos[es] a probability requirement."  Phillips

v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Instead, Twombly

requires sufficient factual allegations to provides "fair notice" of the "grounds" on

which a claim rests.  Id.  The Third Circuit summarizes post-Twombly pleading as

follows:  "The Supreme Court's Twombly formulation of the pleading standard

can be summed up thus:  'stating…a claim requires a complaint with enough

factual matter (taken as true) to suggest' the required element."  Id.  "This 'does

not impose a probability requirement at the pleading stage,' but instead 'simply

calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of' the necessary element."  Maniscalo, 627 F. Supp.2d at 499.

    As is explained below, Plaintiff's Complaint clearly satisfies this pleading

requirement, as it pleads ample facts underlying each of its asserted causes of

action.  Notably, Defendants do not attack the *prima facie* pleading of the

Complaint, but rather counter the alleged facts with their own set of facts and interpretation of relevant contractual provisions.  This is simply not appropriate, or sufficient, for a motion to dismiss.

It is well-established that a motion to dismiss, which is addressed to the face of a Complaint, is improper where there are disputed issues of material fact.  See, e.g., McCullough v. City of Atlantic City, 137 F. Supp.2d 557 (D.N.J. 2001) (disputed issues of fact precluded dismissal).  It is also well-established that contractual claims should not be dismissed where the relevant terms of the contract are ambiguous.  Mercedes-Benz USA, 2009 WL 2255727, at *7 (determination that relevant clause is ambiguous warrants denial of motion to dismiss, because precise meaning of ambiguous term is for the fact-finder).

The Complaint states a claim for each of the causes of action.  The Motion to Dismiss serves only to highlight contractual ambiguities and/or disputed issues of material fact.  Thus, the Motion to Dismiss should be denied in its entirety.

**II.    The Complaint States a Claim for Breach of Contract**

    **A.    The Facts Alleged in the Complaint Clearly State a Claim for Breach of Contract**

The facts alleged in the Complaint clearly state a claim for breach of contract.  The Complaint states that, on or about November 29, 2002, the parties entered into the Agreement. (Compl. ¶ 8 and Exh. A).  Pursuant to the Agreement, Plaintiff provided $22 million to Defendants for investment.  (Compl. ¶¶ 12, 52).

In accordance with the Agreement, Plaintiff provided notice of its termination of the Agreement on September 19, 2008.  (Compl. ¶ 18).  Notwithstanding Plaintiff's termination of the Agreement pursuant to its terms, Plaintiff breached the Agreement by failing to provide <u>over</u> $20 million still due and owing to Plaintiff under the Agreement.  (Compl. ¶¶ 19, 53).

The facts alleged in the Complaint, which must be taken as true, demonstrate that Defendants breached their duties and obligations under the Agreement by: (i) failing to provide amounts due and owing to Plaintiff under the Agreement; (ii) failing to adhere to the valuations that they had already made; (iii) refusing to discuss the details of their valuation of Hedge Funds contained in the Basket, despite Plaintiff's requests for such information; (iv) refusing Plaintiff's requests for information; (v) linking Plaintiff's investment to the performance of "side pockets," without authorization in the Agreement or Plaintiff's permission; and (vi) improperly calculating the value of the Hedge Funds contained in the Basket.  (Compl. ¶¶ 46-58).  Plaintiff was damaged by Defendants' breaches of contract by being deprived of over $20 million due and owing to Plaintiff. (Compl. ¶ 60).

The *prima facie* elements of a claim for breach of contract are therefore very well pleaded, as are the factual allegations to support the claim.

**B.      The Motion to Dismiss Suggests Ambiguities in the
           Agreement and Issues of Fact Which Preclude 12(b)(6)
           Dismissal**

Defendants' Motion to Dismiss essentially argues that a breach of contract

claim has not been stated because, under Defendants' interpretation of the terms of

the Agreement, payment to Plaintiff "may occur months and even years subsequent

to a termination date, particularly in difficult economic conditions," and because

termination did not occur pursuant to an e-mail dated September 19, 2008, as

alleged by Plaintiff in the complaint, but at a later date.  (Def. Memo. of Law p.

15).  These arguments raise disputed issues of material fact and suggest either that

the parties have very different interpretations of the relevant contract terms, or that

the Agreement does not provide deadlines for payouts at all.  Defendants'

arguments preclude dismissal as a matter of law.

**1.      To the Extent that the Agreement Provides for the
            Timing and Method of Payments, The Agreement is
            Ambiguous**

If, in fact, the terms of the Agreement explicitly cover the timing and

method of payments that Defendants must make to Plaintiff, Defendants'

interpretation of the terms is obviously different from Plaintiff's reasonable

interpretation.  Such differences in interpretation highlight the ambiguity in the

Agreement (which must be construed against the Defendants who drafted the

Agreement) and create an issue of fact.  Thus, dismissal must be denied.

It is fundamental that, if a "contract is found to be ambiguous, a motion for summary judgment-much less a motion to dismiss-on a breach of contract claim is improper." OnBank & Trust Co. v. Federal Deposit Ins. Corp., 967 F. Supp. 81, 90 (W.D.N.Y. 1997) ("the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim"); see also Mercedes-Benz USA, 2009 WL 2255727, at *7 (determination that relevant clause is ambiguous warrants denial of motion to dismiss); Thompson Design Group v. 1101-1125 Hudson Street LLC, Civ. No. 05-2697, 2008 WL 4717466, at *9 (D.N.J. Aug. 29, 2008) ("If there is more than one reasonable interpretation of the contract, 'then a question of fact as to the meaning of the contract exists which can only be resolved at trial'"); Biovail Corp. Int'l v. Aktiengesellschaft, 49 F. Supp.2d 750, 774-75 (D.N.J. 1999) ("If a term or provision is ambiguous, its interpretation is relegated to the fact finder" and claim should "proceed past the pleadings"); Lipsky v. Com. United Corp., 551 F.2d 887, 897 (2d Cir. 1976) (reversing district court's decision to grant motion to dismiss where contract term ambiguous); State v. Home Indem. Co., 486 N.E.2d 827, 829 (N.Y. 1985) ("the resolution of the ambiguity is for the trier of fact").

Under New York law, which pursuant to the terms of the Agreement governs here, a contract term is ambiguous if it is:

> capable of more than one meaning when viewed objectively by a
> reasonably intelligent person who has examined the context of the

entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

<u>OnBank</u>, 967 F. Supp. at 90.

Here, the parties' differing interpretations of the Agreement's terms address the timing and amount of payments to be made to Plaintiff upon termination suggest an ambiguity which must be construed against Defendants and prevent dismissal.  <u>67 Wall Street Co. v. Franklin Nat. Bank</u>, 333 N.E.2d 184, 187 (N.Y. 1975) ("a contract must be construed most strongly against the party who prepared it and favorably to a party who had no voice in the selection of its language"). Sections 7 and 9 of the Agreement make clear that "Cash Settlement <u>shall be made</u>" upon termination of the Agreement.  However, Defendants argue that under Section 9 "payment is due only when RBC determines, subsequent to a termination, the amount that 'actually would be received' by an investor in a fund in Healey's basket following a valid redemption or liquidation request; *i.e.*, when the funds actually honor and pay on the redemption requests."  (Def. Memo. of Law p. 4).

Defendants' argument is not supported by the terms of the Agreement, which absolutely do not require actual redemption as a prerequisite to payment. Under Section 6 of the Agreement, "Final Valuation Price" is defined in pertinent part as:

the USD amount…that actually would be received upon complete and final settlement of liquidation or redemption by a **hypothetical beneficial owner** thereof assuming such beneficial owner properly submitted a notice of full liquidation or redemption to such Hedge Fund on the Expiration Date with instructions to liquidate or redeem such Hedge Fund as soon as possible… (emphasis added)

Neither the definition of "Final Valuation Price" nor sections 7 or 9 require actual redemption by the hedge funds, as argued by Defendants.  This is clear by use of the terms "<u>would</u> be received," "hypothetical," and "assuming."  Plaintiff's plain reading of the relevant provisions is correct.  Defendants' interpretation is not based on the plain language of the relevant contractual provisions and at most suggests another ambiguity that cannot be resolved on a motion to dismiss.

To the extent that Plaintiff's interpretation of the plain language of the Agreement is not the only logical interpretation, the relevant contractual terms are ambiguous, must be construed against Defendants, and preclude dismissal.

> **2.  To the Extent the Agreement Does Not Expressly Provide a Date Certain for Payment, Defendants Have Breached the Implied Duty of Good Faith and Fair Dealing**

To the extent that the Agreement does not expressly provide for the timing of Defendants' payments to Plaintiff, as asserted by Defendants, Plaintiff has still stated a claim for breach of contract under the implied duty of good faith and fair dealing.  Defendants' argument is that no payment is due until RBC can "determine the amount that a fund investor actually would receive unless and until

a fund honors an pays out on a timely redemption request." (Def. Memo of Law p.

15). However, because the Calculation Agent must determine the amount that

actually would be received upon complete and final settlement of liquidation or

redemption by a **hypothetical beneficial owner thereof**, Plaintiffs have properly

alleged that Defendants' failure to make this determination violates the implied

duty of good faith and fair dealing.

Under New York law, a party may be held to breach a contract under the

implied duty of good faith and fair dealing even when that party is not in breach of

an express contractual provision. See e.g., Dalton v. Educ. Testing Serv., 87

N.Y.2d 384, 389 (1995) (implied duty "embraces a pledge that 'neither party shall

do anything which will have the effect of destroying or injuring the right of the

other party to receive the fruits of the contract'"); Outback/Empire I, Ltd.

Partnership v. Kamitis Inc., 35 A.D.3d 563 (N.Y. App. Div. 2006) (although

certain contractual provisions allow for discretion, a party is required to "carry out

its contractual obligations incident to the exercise of its discretion in good faith");

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chipetine, 221 A.D.2d 284 (N.Y.

App. Div. 1995) (upholding breach of contract claim because refusal of demands

for reimbursement under a contract constituted breach of the duty of good faith and

fair dealing); Tedeschi v. Wagner Coll., 404 N.E.2d 1302, 1305 (N.Y. 1980)

(where contract contemplates exercise of discretion, it implies a promise not to act arbitrarily or irrationally in exercising that discretion).

Thus, particularly where a contract is unclear or ambiguous, it is not necessary to identify a particular section of a contract that was breached where it is clear that the "defendant breached the duty of good faith and fair dealing implied in every contractual relationship." Merrill Lynch, 221 A.D.2d at 287. Therefore, to the extent that the timing of payments to Plaintiff is not expressly dictated by the terms of the Agreement, Plaintiff asserts that Defendants' position that they can exercise unfettered discretion, without audit, to wait "months and even years subsequent to a termination date" (Def. Memo of Law p. 15) before making payment to Plaintiff, breaches the implied duty of good faith and fair dealing.

Defendants hold millions of dollars belonging to Plaintiff, pursuant to an agreement that terminated in 2008 (or, as Defendants assert and which creates another issue of fact, in 2009). Such behavior is unconscionable. Plaintiff is entitled to a remedy and to finality in this transaction. At a minimum, Plaintiff is entitled to pursue discovery and to receive an accounting of the monies still owed. Plaintiff has stated a claim for breach of contract and breach of the implied duty of good faith and fair dealing, and the Motion to Dismiss should be denied.

### 3.    When Plaintiff Provided Notice of Termination is an Issue of Fact Precluding 12(b)(6) Dismissal

The Motion to Dismiss highlights a material and disputed issue of fact regarding the date upon which Plaintiff provided notice of termination of the Agreement.  The Complaint alleges:  "On September 19, 2008, Healey provided notice to RBC of its termination of the Agreement by requesting the redemption of its remaining positions in the Basket." (Complaint ¶ 18).  The Complaint further alleges that "Plaintiff's written notice, sent via email and acknowledged by Defendants on September 19, 2008, sets the Termination Date as September 19, 2008. (Complaint ¶ 18).

Defendants dispute this material issue of fact by asserting that Healey "terminated the Call Option nine months later pursuant to the 'Termination of Cash-Settled Equity Barrier Call Option,'" effective June 30, 2009.  (Defendants' Memo. of Law p. 4).  First, the introduction of such extrinsic evidence is improper on a motion to dismiss, since Plaintiff did not rely upon or refer to the document in the Complaint.  It is Plaintiff's position that the purported document, drafted by Defendants, did not constitute termination, but was Defendants' attempt to delay the termination date of the Agreement while improperly holding onto Plaintiff's money.  (Nepa Affidavit ¶¶ 4-6) (See Statement of Facts Section B for explanation of why Exhibit F to the Resnik Affidavit cannot be considered on this Motion to Dismiss).  Notably, the Agreement does not state that termination is effected only

by execution of such a document.  (Defendants' Memo. Of Law p. 4).  Rather, the Agreement states that Termination may be effected by providing "written notice of such termination to Seller." (Complaint Exh. A § 9 p. 10).  Plaintiff provided that notice on September 19, 2008.  (Complaint ¶18).

Nevertheless, Defendants have raised a material issue of disputed fact that absolutely precludes 12(b)(6) dismissal.  Plaintiff's assertion that its September 19, 2008 email constituted notice of termination is reasonable and <u>must be accepted as true on this motion to dismiss</u>.  Critically, even if the termination occurred after September 19, 2008, Plaintiff would still have a claim against Defendants.  The effective termination date will obviously be an important issue subject to discovery and perhaps even expert testimony.  However, given the parties' dispute regarding this material issue of fact, the Complaint cannot be dismissed.

> **4.     Whether Defendants Improperly Invested Plaintiff's Money in Side Pockets is Another Issue of Fact Precluding 12(b)(6) Dismissal**

Additional issues of material fact improperly raised by the Motion to Dismiss include whether Defendants failed to mention that they would invest Plaintiff's money in "side pockets," whether such omissions were material, whether Defendants had a duty to disclose such information, whether the practice is common to hedge funds and/or over-the-counter derivative products, and whether Defendants had any role in the decision or process.  (Defendants' Memo.

of Law pp. 19-21).  These are <u>all</u> issues of fact that prevent dismissal on the face of the Complaint.

Defendants' improper citations to the practice of hedge funds in investing in side pockets, Defendants' inability to control the process, and Healey's supposed receipt of information (more than three years after entering into the Agreement) which should have informed it of the process (Defendants' Memo. of Law pp. 19-21) are all issues of fact that are subject to discovery, should not be raised on a 12(b)(6) motion, and require that the motion to dismiss be denied.  <u>See</u> <u>Dayan v. Witkoff</u>, No. 109234/08, 2009 WL 994791 (N.Y. Sup. Ct. April 6, 2009), <u>quoting</u> <u>Yanuck v. Simon Paston & Sons Agency</u>, 209 A.D.2d 207, 208 (1st Dep't 1994) ("defendants' interpretation would require the court to glean intent 'from disputed evidence or from inferences outside the written words,' and, as a result, defendants' interpretation raises issues 'of fact that must be resolved by trial'").

### 5.   Whether Plaintiff is Entitled to the Amounts Listed in RBC's Monthly Valuation Reports is Another Issue of Fact.

Defendants raise yet another issue of fact in their Motion to Dismiss by asserting that Plaintiff is not entitled to the amount shown in RBC's monthly valuation report.  Defendants mistakenly argue that Healey's basis for a claim for $27,906,960 rests upon the fact that "this amount appears on a monthly estimated value report."  (Def. Memo. of Law p. 17).  To be clear, Plaintiff is entitled to at

least $27,906,960 under the terms of the Agreement.  Plaintiff relies upon the

dollar values provided by Defendants in the monthly valuation reports because, as

Calculation Agent, Defendants are required to make the determinations necessary

to establish the Final Valuation Price.

 Defendants attempt to explain away the monthly valuation reports as

"merely estimates provided for informational purposes only" that only reflect the

"Valuation Price" and not the "Final Valuation Price."  (Id.).  However, Plaintiff

has alleged, upon information and belief, that these estimates establish the Final

Valuation Price and the Cash Settlement Amount due and owing to the Plaintiff.

(Compl. ¶¶ 29-35).  Additionally, Plaintiff has alleged that these monthly estimates

have not changed significantly over the past year.  (Compl. § 35 and Exh. K, O,

and P).  At a minimum, Plaintiff raises an issue as to whether Defendants have

breached the duty of good faith and fair dealing and, as argued below, breached

their fiduciary duty by not finalizing these estimates as the Calculation Agent.

### III. Plaintiff Has Stated a Claim for Breach of Fiduciary Duty

 Putting aside Defendants' unwarranted and offensive accusation that

Plaintiff's fiduciary duty claims are "frivolous," Defendants obviously misread the

clear allegations of the Complaint and fail to understand the applicable law.

Defendants rely on the following points, neither of which defeat the breach of

fiduciary duty claim:  (1) the Agreement states that Defendants are not acting as a

fiduciary or advisor to Plaintiff with regard to the investments, and that Plaintiff has "reached its own conclusions about the [Call Option]], and any legal regulatory, tax, accounting or economic consequences arising from the [Call Option];" and (2) the Agreement is an "arms-length agreement negotiated by sophisticated parties." (Defendants' Memo. of Law pp. 22-23). These arguments have been soundly defeated under applicable New York law.

First, it is well-established that a breach of fiduciary duty claim may be asserted in connection with a breach of contract claim. Although "causes of action for breach of fiduciary duty that merely restate contract claims must be dismissed, conduct amounting to a breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract which is nonetheless independent of such contract." Bullmore v. Ernst & Young Cayman Is., 45 A.D.3d 461, 463 (N.Y. App. Div. 2007) (citation omitted), see also Gray & Assocs., LLC v. Speltz & Weis LLC, No. 150446/2007, 2009 WL 416138, *6 (N.Y. Sup. Feb. 2, 2009) (denying dismissal of non-contractual claims, including breach of fiduciary duty, fraud, and breach of the covenant of good faith and fair dealing); Sally Lou Fashions Corp. v. Camhe-Marcille, 300 A.D.2d 224 (N.Y. App. Div. 2002) (allowing breach of contract and breach of fiduciary duty claims, noting that inadequate compensation subsequent to agreement could be violative of fiduciary duty); Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 167-68 (N.Y.

App. Div. 1987) ("It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by the contract but which is independent of the contract itself); In re Express Scripts, Inc., 522 F.Supp.2d 1132, 1144 (E.D. Mo. 2007) (applying New York law) (denying motion to dismiss fiduciary duty claim notwithstanding existing contract between the parties).

This is particularly so where, as here, the relevant contractual provisions are unclear, where the parties to the contract had uneven bargaining power, where one of the parties was given unfettered control over the other parties' money, or where one party was uniquely positioned such that other party had no choice but to rely upon and trust the other party. "A fiduciary relationship exists where one party reposes confidence in another, and there is resulting superiority and influence on the other." In re Express Scripts, Inc, 522 F.Supp.2d at 1144 (applying New York law) (emphasis added).

Second, the presence of the disclaimer language cited by Defendants does not defeat the fiduciary duty claim for two reasons. First, the relevant language does not apply to the claims alleged here. Second, Defendants' fiduciary duty arises out of the special circumstances created by the unfettered and unaudited discretion of Defendants as Calculation Agent, not to any purported "investment advice" regarding the funds contained in the Basket. Simply stated, Plaintiff is not

alleging that Defendants provided faulty investment advice.  Plaintiff alleges that

Defendants have violated their fiduciary duty in their capacity as Calculation

Agent and in the processing and stewardship of Plaintiff's funds. The disclaimer

language cited by Defendants does not relate to matters uniquely within

Defendants' knowledge and control.

The Complaint pleads the following unique facts and circumstances which

gave rise to Defendants' fiduciary duty (not as investment advisor, but as holder of

Plaintiff's funds with unfettered discretion to calculate the amounts due and owing

to Plaintiff):  (1) Defendants[2] have "sole discretion" under the Agreement to

determine the Ending Basket Level; (2) Defendants have "sole judgment" under

the Agreement to determine the "positive or negative return in the USD value of

the Basket during the relevant Valuation Period based on the Valuation Prices"; (3)

Defendants have "sole judgment" to determine the Valuation Price of the Basket,

including adjustments which "the Calculation Agent in its sole judgment"

determines to be necessary or appropriate; (4) Defendants have the right "at any

time and from time to time to restate, recalculate, revalue and re-determine, in

whole or in part, each and every statement, calculation, valuation and

determination required by this Section 5"; (5) Defendants have "sole discretion"

---

[2] The Complaint asserts that RBC is liable for RBCD's breaches as Calculation
Agent because the Agreement explicitly designates RBCD as the Agent for RBC.
(Complaint ¶ 63).

under the Agreement to determine the Final Valuation Price; (6) Defendants have "sole discretion" and "sole judgment" not to effect a Releveraging.  (Complaint Exh. A §§ 5-8).  The foregoing language of the Agreement demonstrates the extraordinary power and control that Defendants have over Plaintiff's money, giving rise to a clear fiduciary duty.

The disclaimer clause in the Agreement states that Defendants did not give Plaintiff "investment advice," which is not even alleged by Plaintiff in the Complaint.  (Complaint Exh. A § 11 p. 13 ("Buyer Representations")).  Moreover, the disclaimer specifically excludes representations relating to the "terms and provisions of the Transaction," which are in essence the material misrepresentations alleged here  (Id.)  Thus, the disclaimer language does not prevent the assertion of Plaintiff's claims.  See, e.g., P.T. Bank Central Asia v. ABM Amro Bank N.V., 301 A.D.2d 373 (N.Y. App. Div. 2003) (disclaimer language in agreement did not bar claims for fraud); Danaan Realty Corp. v. Harris, 157 N.E.2d 597(N.Y. 1959) (disclaimer language will not prevent a claim of reliance unless the alleged reliance is identical to that specified in the disclaimer).

Finally, whether or not Plaintiff is a sophisticated party (again, an issue of fact) is absolutely irrelevant to Plaintiff's claims and to this Motion to Dismiss.  See, e.g., ARIS Multi-Strategy Offshore Fund v. Devaney, No. 602231/08, 2009

WL 5851192, at *9 (N.Y. Sup. Dec. 14, 2009) ("even if plaintiffs may be characterized as sophisticated investors, they could still have justifiably relied upon defendants' alleged misrepresentations"); National Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 89 Fed. App'x 287, 294-95 (2d Cir. 2004) ("Sophisticated entities can justifiably rely on fraudulent statements," and whether such entities did so "is a genuine issue of material fact").  Thus, Plaintiff has stated a claim for breach of fiduciary duty and the Motion to Dismiss should be denied.

## IV.   Plaintiff Has Stated a Claim for Fraud

Plaintiff has also sufficiently stated claims for common law fraud and for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. Just recently, the New York Supreme Court refused to dismiss a common law fraud claim arising out of the plaintiffs' investments with defendants.  See Northern Valley Partners, LLC v. Jenkins, No. 101957/08, 2010 WL 1433096 (N.Y. Sup. April 6, 2010).  The Jenkins court rejected the argument that plaintiffs were improperly couching a breach of contract claim as a fraud claim, stating:  "It is well settled that 'a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract." Id. at *3, quoting First Bank of Americas v. Motor Car Funding, Inc., 257 A.D.2d 287, 291-92 (N.Y. App. Div. 1999).

To state a claim for fraudulent misrepresentation, "the complaint must allege that the defendant made a material misrepresentation of fact; that the misrepresentation was made intentionally in order to defraud or mislead the plaintiff; that the plaintiff reasonably relied on the misrepresentation; and that the plaintiff suffered damages as a result of its reliance on the defendant's misrepresentation." P.T. Bank Central Asia., 301 A.D.3d at 376, citing Swersky v. Dreyer and Traub, 219 A.D.2d 321, 326, (N.Y. App. Div. 1996). "A cause of action for fraudulent concealment requires, in addition to the four foregoing elements, an allegation that the defendant had a duty to disclose material information and that it failed to do so." Id., citing Wiscovitch Assocs., Ltd. v. Philip Morris Cos., Inc., 193 A.D.2d 542 (N.Y. App. Div. 1993).

It is well settled under New York law that a claim for fraud may be based on a party's failure to disclose a material fact that, in good faith, should have been disclosed. See Merrill Lynch, Pierce, Fenner & Smith, Inc., 221 A.D.2d at 286 (while there was no affirmative misrepresentation, there was concealment of a fact known only to the defendant regarding plaintiff's money that was "tantamount to larceny"). "The suppression of material facts which a person is in good faith bound to disclose is evidence of and equivalent to a false representation." Id. at 285, quoting 60 N.Y.Jur.2d, Fraud and Deceit § 88; see also Tahini Inv., Ltd. v. Bobrowski, 99 A.D.2d 489, 490 (N.Y. App. Div. 1984) ("Where a party to a

contract conceals a material fact which he is in good faith bound to disclose, such silence may constitute actionable misrepresentation").

Even in an arms-length transaction, and even where there is no fiduciary duty between the parties, a duty to disclose may arise where there are "special facts" such as material information peculiarly within the knowledge of the defendant. "Under the 'special facts' doctrine, a duty to disclose arises 'where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair.'" Swersky v. Dreyer and Traub, 219 A.D.2d 321, 327 (N.Y. App. Div. 1996) (affirming denial of summary judgment on fraud claims where issues required resolution by the trier of fact); see also P.T. Bank Central Asia, 301 A.D.2d at 378 ("duty to disclose arises 'where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair'"); Bank of New York v. Asati, Inc., 184 A.D.2d 443, 444 (N.Y. 1992) ("duty to disclose may arise 'where a party has superior knowledge not available to the other'").

Thus, "even where the parties have executed a specific disclaimer of reliance on a seller's representations, a purchaser may not be precluded from claiming reliance on any oral misrepresentations if the facts allegedly misrepresented are peculiarly within the seller's knowledge." Tahini Investments Ltd., 99 A.D.2d at 490 (emphasis added); see also P.T. Bank Central Asia, 301 A.D.2d at 378

(disclaimer in agreement did not prevent claim based on misrepresentations peculiarly within the other party's knowledge).  Here, the Complaint alleges that Defendants made material omissions about matters peculiarly within their knowledge regarding the terms and provisions of the Transaction they were selling. (Complaint ¶¶ 116-122),  "[S]uch silence may constitute an actionable misrepresentation."  Id.

Finally, a determination of whether Defendants were aware that Plaintiff's funds would be invested in "side pockets," and whether Defendants had a duty to disclose this information to Plaintiff, are issues of fact that cannot be resolved on a motion to dismiss.  See, e.g., OnBank & Trust Co. v. FDIC, 967 F. Supp. 81 (W.D.N.Y. 1997) (issues regarding defendant's knowledge and plaintiff's ability to ascertain such information involved questions of fact that could not be resolved on a motion to dismiss); Swersky, 219 A.D.2d at 327-28 (whether the "special facts" doctrine applies is a question of fact precluding summary dismissal of fraud claim).

The Complaint alleges that Defendants had a duty to inform Plaintiff that Plaintiff's funds might be invested in "side pockets," might be subject to holdbacks, and thus would not be returned upon Elective Termination of the Agreement.  "In a business transaction, a duty to disclose may arise 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" OnBank & Trust Co.,

967 F. Supp. at 90, quoting Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,

731 F.2d 112, 123 (2d Cir. 1984).

      This is so even if there were some way for Plaintiff to discover this

information. "[U]nder New York law relating to fraud, it is not necessary for the

plaintiff to prove that the correct information 'was available only to the defendant

and [was] absolutely unknowable by the plaintiff before reliance can be deemed

justified.'" OnBank, 967 F. Supp. at 88, quoting Lazard Freres & Co. v. Protective

Life Ins. Co., 108 F.3d 1531, 1542-43 n.9 (2d Cir. 1997); see also Mallis v.

Bankers Trust Co., 615 F.2d 68, 80 (2d Cir. 1980) ("indeed some cases have

imposed liability in situations in which plaintiff could have determined the truth

with relatively modest investigation").

      Not surprisingly, whether a party to an agreement has a duty to disclose

particular information is a factual issue which precludes a 12(b)(6) dismissal. See,

e.g., OnBank & Trust Co. v. Federal Deposit Ins. Corp., 967 F. Supp. 81

(W.D.N.Y. 1997) (denying motion to dismiss where section of securities purchase

agreement was ambiguous and whether defendant had a duty to disclose

information was a factual issue).

      As for the federal 10b-5 claim, the Complaint absolutely satisfies the

pleading requirements of the Private Securities Litigation Reform Act of 1995 (the

"PSLRA") because it very clearly specifies the material information that

Defendants omitted from disclosing to Plaintiff.  The Complaint specifically states that Defendants did not disclose that Plaintiff's funds would be linked to the performance of unauthorized "side pockets."  (Complaint ¶ 111).  The Complaint states that, although "Plaintiff was told that its investment was linked to the performance of certain Hedge Funds as components of the Basket, Defendants have actually linked Plaintiff's investment to the performance of 'side pockets' in those funds.  This information was never disclosed to Plaintiff prior to entering the Agreement or during the term of the Agreement." (Complaint ¶ 111).  The Complaint further alleges that "Plaintiff reasonably relied to its detriment on Defendants' materially false and misleading omissions by entering into the Agreement."  (Complaint ¶ 113).

The main argument offered by Defendants in their Motion to Dismiss is that the Complaint fails "to meet the threshold requirement of identifying a misleading statement or omission by RBC."  (Defendants' Memo. of Law at p. 25).  Defendants' argument misses the point that a material <u>omission</u> is pleaded in the Complaint.  Thus, Defendants' coy inquiries - "Who made the statement?  When was that statement made?  Why was the statement false?" - are irrelevant.  (<u>Id</u>.)

Rule 10b-5 makes it unlawful "to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  <u>EP Medsystems, Inc. v. Echocath, Inc.</u>, 235

F.3d 865, 871 (3d Cir. 2000), <u>quoting</u> 17 C.F.R. § 240.10b-5(b).  Under Rule 10b-

5, Plaintiff is required to plead that Defendants (1) made misstatements or

omissions of material fact; (2) with scienter; (3) in connection with the purchase or

sale of securities; (4) upon which Plaintiff relief; (5) which proximately caused

Plaintiff injury.  <u>Id</u>. at 871 (reversing dismissal of 10b-5 claim).  The Complaint

alleges with specificity each of these elements.  (<u>See</u> Compl. ¶¶ 108-115).

Moreover, issues of materiality, reliance and causation are typically for the trier of

fact and preclude 12(b)(6) dismissal.  <u>See</u> <u>Echocath</u>, 235 F.3d at 875-76, 884

(reversing dismissal of 10b-5 claim); <u>see</u> <u>also</u> <u>In re Adams Golf, Inc. Sec. Litig.</u>,

381 F.3d 267, 274 (3d Cir. 2004) ("Materiality is ordinarily an issue left to the

factfinder and is therefore not typically a matter for Rule 12(b)(6) dismissal).

     For all of these reasons, the Complaint sufficiently alleges claims of

common law fraud and of securities fraud under Rule 10b-5, and the Motion to

Dismiss those claims should be denied.

### V.    New York Law Allows Plaintiff's "Quasi-Contractual" Claims

     Contrary to Defendants' blanket assertion that "New York law bars quasi-

contract theories where the parties' relationship is governed by a detailed and

enforceable written agreement," (Defendants' Memo. of Law p. 27), there are

multiple instances where quasi-contractual and contractual claims are permitted to

be asserted under New York law, all of which apply here.

As stated by the New York Appellate Division, Clark-Fitzpatrick (cited in

Defendants' Memo. of Law at p. 28) "does not hold that a claim in contract and

one in quasi contract are mutually exclusive in all events and under all

circumstances.  Indeed, this has never been the law in New York."  Joseph

Sternberg, Inc. v. Walber 36th Street Assocs., 187 A.D.2d 225, 227-28 (N.Y. App.

Div. 1993) (emphasis added); see also Spirit Locker, Inc. v. Evo Direct, LLC, No.

09-CV-1582, 2010 WL 1006561, at *8 (E.D.N.Y. March 19, 2010) (distinguishing

Clark-Fitzpatrick to note that unjust enrichment claims obviously co-exist with

contractual claims where there has been overpayment under an existing contract);

Zuccarini v. Ziff-Davis Media, Inc., 306 A.D.2d 404 (N.Y. App. Div. 2003)

(plaintiff may allege both a breach of contract claim and quasi contractual

promissory estoppel claim); Gray & Assocs., LLC v. Speltz & Weis LLC, No.

150446/2007, 2009 WL 416138, at *6 (N.Y. Sup. Feb. 2, 2009) (denying dismissal

of non-contractual claims, including breach of fiduciary duty, fraud, and breach of

the covenant of good faith and fair dealing).

Where a contract is silent or ambiguous regarding an issue in dispute, it is

entirely appropriate to plead quasi-contractual claims along with contractual

claims.  Joseph Sternberg, 187 A.D.2d at 228.  Similarly, where a fiduciary duty

arises out of the relationship created by contract, it is entirely appropriate to assert

a claim for breach of that duty independent of the breach of contract claim.

Bullmore v. Ernst & Young Cayman Is., 45 A.D.3d 461, 463 (N.Y. App. Div. 2007); Dayan v. Witkoff, WG, No. 109234/08, 2009 WL. 994791 (N.Y. Sup. Ct. April 6, 2009); Gray & Assocs., LLC v. Speltz & Weis LLC, 2009 WL 416138, at *6 (N.Y. Sup. Feb. 2, 2009). Finally, it is "well settled that 'a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract.'" Northern Valley Partners, LLC, 2010 WL 1433096, at *3.

 This Court agrees with the foregoing principles, permitting the pleading of contractual and quasi contractual claims. See, e.g., Maniscalco v. Brother Int'l Corp., 627 F.Supp.2d 494, 505 (D.N.J. 2009) ("An unjust enrichment claim may be sustained independently as an alternative theory of recovery"); In re K-Dur Antitrust Litig., 338 F. Supp.2d 517, 544 (D.N.J. 2004) (motion to dismiss unjust enrichment claim was premature, even where other remedies at law were available).

 The non-contractual and quasi-contractual claims asserted by Plaintiff are all critical because, given Defendants' position that no deadline is provided under the Agreement for final payment to Plaintiff, the Agreement could possibly be deemed unenforceable under the doctrine of definiteness. See, e.g., F&K Supply Inc. v. Willowbrook Dev. Co., 288 A.D.2d 713, 714 (N.Y. App. Div. 2001) ("It is axiomatic that '[i]f an agreement is not reasonably certain in its material terms,

there can be no legally enforceable contract'"").  Should that happen, the only

remedies available to Plaintiff are the remaining claims asserted in the Complaint.

Each of those claims is well-pleaded and supported by factual allegations.

Accordingly, none of those claims should be dismissed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, each of the claims stated in the Complaint is

well-pleaded and should proceed to discovery, and Defendants' Motion to Dismiss

should be denied in its entirety.

FOX ROTHSCHILD LLP
Attorneys for Plaintiff

By: s/ Jack L. Kolpen
  Jack L. Kolpen, Esq
  Princeton Pike Corporate Center
  997 Lenox Drive, Building 3
  Lawrenceville, NJ 08648-2311
  T: (609) 896-3600
  F: (609) 896-1469

  Joseph M. Pastore III, Esq.
  Brian W. Song, Esq.
  (*Admitted Pro Hac Vice*)
  100 Park Avenue, Suite 1500
  New York, NY 10017
  T: (212) 878-7900
  F: (212) 692-0940

Dated:  June 25, 2010

## <u>CERTIFICATION OF SERVICE</u>

I, Jack L. Kolpen, hereby certify that I caused one true and correct copy of

the foregoing Memorandum of Law in Opposition to Motion to Dismiss to be filed

electronically on June 25, 2010.  Notice of this filing will be sent to all parties by

operation of the Court's electronic filing system.  Parties may access this filing

through the Court's system.  A courtesy copy of the foregoing was served *via*

Federal Express upon the Honorable Renee Marie Bumb, U.S.D.J.


<u>s/Jack L. Kolpen</u>

Dated:  June 25, 2010