NOT FOR PUBLICATION                                    [Dkt. No. 9]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| HEALEY ALTERNATIVE INVESTMENT PARTNERSHIP, | |
| Plaintiff, | Civil No. 10-1567 (RMB)(KMW) |
| v. | **OPINION** |
| ROYAL BANK OF CANADA and RBC DOMINION SECURITIES CORPORATION a/k/a RBC CAPITAL MARKETS CORPORATION, | |
| Defendants. | |

Appearances:

Jack L. Kolpen
Joseph M. Pastore III
Brian W. Song
Fox Rothschild LLP
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
    Attorneys for Plaintiff

Scott A. Resnik
Bruce G. Vanyo
William M. Regan
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022-2585
    Attorneys for Defendants

**BUMB**, United States District Judge:

I.   INTRODUCTION

Plaintiff Healey Alternative Investment Partnership ("Plaintiff" or "Healey") filed a Complaint alleging eight causes of action arising out of an option contract purchased from the defendants Royal Bank of Canada and RBC Dominion Securities Corporation (collectively, "Defendants" or "RBC"). This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000. Defendants now move for a dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

II.   BACKGROUND

The facts relevant to this Rule 12(b)(6) motion are those drawn from the complaint, the attached exhibits, and matters of public record. *See Sands v. McConnick*, 502 F.3d 263 (3d Cir. 2007). Defendants request that the Court take judicial notice of various documents submitted with their motion on the grounds that the documents are either integral to the complaint, relied upon by the complaint, or their authenticity is not in dispute. (Defs.' Br. 6 n.6.) Plaintiff objects to the request, arguing that the documents are not relied upon or integral to the complaint; Plaintiff also disputes their authenticity. (Pl.'s Opp. 10-13.) The Court

2

agrees with Plaintiff. The documents address the merits of Plaintiff's claims, are not relied upon or integral to the Complaint, and are of disputed authenticity and relevance. Accordingly, the facts relevant to this motion are those drawn from the complaint, the attached exhibits, and matters of public record.

Plaintiff, a New Jersey partnership with no partners being citizens of either New York or Canada, purchased a call option from RBC, a Canadian bank and its wholly owned New York subsidiary. (Compl. ¶¶ 5, 6, 8.) The parties memorialized the option's terms in a Cash-Settled Equity Barrier Call Option agreement (the "Agreement"), dated November 22, 2002. (*Id.* ¶ 8 and Ex. A). The Agreement is governed by New York law (*Id.* Ex. A at 17), a point the parties do not contest.

Essentially the Agreement states that Healey purchased an option to buy a "Basket" of investments in various hedge funds and other investment vehicles at a set price called the "Strike Price."[1] (*Id.* Ex. A §§ 1 & 2.) Traditionally, when exercised, an option requires the buyer to pay the seller the price set forth in the option and the seller to transfer the underlying property, e.g., an equity investment, to the purchaser. Healey's option, however, is denoted as a "Cash-

---

[1]     The Court notes that the Agreement is actually a contract for 1,000 options on identical terms. (Compl. Ex. A § 1.) For the sake of clarity, the Court will refer to the Agreement as for a single option.

The Court also recognizes that the following summary omits terms of the Agreement that are material to the Agreement, including terms related to the "Dividend Adjustment" (Ex. A § 5),  "Releveraging and Deleveraging" (Ex. A. § 6), and "Changes to Basket" (Ex. A §10), but which are not relevant to resolution of the pending motion.

Settled" option, meaning that if the value of the underlying hedge fund investments exceed the Strike Price, RBC can settle the option by paying Healey an amount of cash equal to that difference, rather than transfer the hedge fund investments to Healey. (*Id.* Ex. A § 5.) This difference is described in the Agreement as the "Option Value." (*Id.*)

As alleged in the Complaint, Healey and RBC negotiated a Cash Settled Option because RBC would not own the investments Healey was purchasing an option on. (*Id.* ¶ 14; Ex. A § 11 at 15.) However, the Agreement also contemplated that RBC could hedge its risk that the investments would increase in value substantially - and thus require a substantial payment to Healey - by actually investing in the hedge funds in the Basket. (*Id.*) RBC did in fact invest in the hedge funds. (*Id.* ¶¶ 39-40.)

Determining the Option Value was less than straightforward. Periodically, RBC determined the Option Value and reported the value to Healey. (*Id.* ¶¶ 29-37.) This value was determined by RBC,

> in its sole judgment . . . based in whole or in part upon, among other things, verbal or written statements produced by the Hedge Fund[s], and/or estimates of such valuation by [RBC] in its sole judgment, and which may include adjustments by [RBC] to reflect valuation uncertainty, liquidity restrictions and/or any and all other factors determined by [RBC] in its sole judgment to be necessary or appropriate to accurately reflect the estimated liquidation value . . .

(*Id.* Ex. A § 5 at 5.)

4

A different valuation would be determined, however, upon termination and exercise of the option. To establish the "Final Option Value," RBC was to determine,

> in its sole discretion, [the amount] that actually would be received upon complete and final settlement of liquidation or redemption by a hypothetical beneficial owner thereof assuming such beneficial owner properly submitted a notice of full liquidation or redemption to such Hedge Fund on the [Termination] Date with instructions to liquidate or redeem such Hedge Fund as soon as possible . . .

(*Id.* Ex. A § 6.) Although RBC was free to exercise its judgment and discretion in calculating both the Option Value and Final Option Value, according to definitions incorporated by reference, such judgment and discretion was to be exercised "in good faith and in a commercially reasonable manner." (*Id.* ¶ 28, Ex. A Preamble and §§ 5 & 6.) RBC was not obligated to settle the option until it had determined the Final Option Value. (*Id.* Ex. A §§ 6 & 7.)

As alleged, Healey could exercise the option at any point by written notice to RBC. (*Id.* Ex. A § § 1& 4.) Healey asserts that it provided such written notice via email, which Defendants acknowledged, on September 19, 2008. In other words, Plaintiff alleges it terminated the Agreement as of September 19, 2008, which triggered RBC's obligation to determine the Final Option Value. (*Id.* ¶ 18.) RBC disputes that Healey terminated the Agreement on this date, contending instead that Healey did not terminate the Agreement until June of 2009. Because this matter is before the Court on a motion to dismiss, however, Healey's allegation will be accepted as true.

5

The next dispute concerns RBC's settlement of the option, principally RBC's manner of calculating the Final Option Value. Healey alleges that, under the Agreement, the total owed to Plaintiff is the Option Value on September 19, 2008. (*Id.* ¶ 35). As of August 29, 2008, Plaintiff alleges, RBC had determined the Option Value to be $27,906,962.90. (*Id.* ¶ 29.) Healey alleges RBC owes it this amount.[2] (*Id.* ¶ 19.) Yet, Healey alleges, RBC has paid only $7,599,000. (*Id.*) Heally further alleges that RBC has refused to substantiate both the Option Value calculations and the source of the approximately $7.6 million paid to Healey. (*Id.* ¶¶ 19-20, 30-34, 36 & 38.) Healey also alleges RBC has linked the option's value to "side pockets" without authorization and in breach of the Agreement. (*Id.* ¶ 37.) In the meantime, RBC continued to provide Healey with monthly interim Option Values through at least March 2010. (*Id.* ¶ 35; Ex. H.)

Based on the foregoing, Healey asserts the following claims: Breach of Contract (*id.* ¶¶ 46- 60); Breach of Fiduciary Duty (*id.* ¶¶ 61-75); Unjust Enrichment, Pled in the Alternative (*id.* ¶¶ 76-83); Breach of the Covenant of Good Faith and Fair Dealing (*id.* ¶¶ 84-94); Equitable Accounting and Constructive Trust (*id.* ¶¶ 95-102); Negligence (*id.* ¶¶ 103-107); Securities Fraud in Violation of 15 U.S.C. § 78j(b) (*id.* ¶¶ 108-115); and Common Law Fraud (*id.* ¶¶ 116- 122).

---

[2]      Healey alleges that in September 2008 RBC determined the Option Value to be almost $22  million. (Compl. ¶ 31.) The Complaint does not allege why the the September 19, 2008 termination should be settled with the August 2008 Option Value rather than the September 2008 Option Value or the Option Value on September 19, 2008.

RBC counters that it has informed Healey that it is not obligated to settle the option at the interim Option Value because the Agreement requires settlement at the Final Option Value, which is not the same as the interim Option Value. (*Id.* Ex. H.) RBC argues that because the Final Option Value is the amount a hypothetical investor would actually receive from the hedge funds, and RBC has actually invested in the hedge funds, the Final Option Value will be what RBC, an actual investor, receives upon liquidating its investments. Unfortunately, RBC argues, due to economic conditions RBC has not been able to redeem the investments. Therefore, because RBC has not been able to determine the Final Option Value, it is not yet obliged to settle the option. Defendants' obligation to Plaintiff has not been triggered under the Agreement. As such, Plaintiff has failed to state a claim. Defendants now move for dismissal.

In opposition to Defendants' motion, Healey has moved for leave to file a sur-reply to respond to what it contends were "Defendants' gross mischaracterizations of arguments and facts made by the Plaintiff in their Opposition to the Motion to Dismiss." [Dkt. No. 22.] The Court finds that since it has read Plaintiff's Opposition and did not rely on Defendants to characterize the arguments contained therein, the proposed sur-reply will not be of assistance to the Court.   Accordingly, Plaintiff has not shown good cause why it should be permitted to file a sur-reply and this request will be denied.

III.    MOTION TO DISMISS

    A.    Standard

On a motion to dismiss pursuant to Rule 12(b)(6),  the moving party bears the burden of showing that there "are no material issues of fact, and that he or she is entitled to judgment as a matter of law." *Adams v. LexisNexis Risk & Analytics Group, Inc.*, No. 08-4708, 2010 U.S. Dist. LEXIS 47123, *9 (D.N.J. May 12, 2010) (*quoting DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2009)). The Court shall "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp.2d 494, 498 (D.N.J. 2009). Plaintiff may be entitled to relief if the Complaint alleges "enough factual matter (taken as true) to suggest the required element[s]" of the asserted claim. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Labels, conclusions and "a formulaic recitation of the elements of [the] cause of action will not do." *Bell Atlantic Corp. V. Toombly*, 550 U.S. 544, 545 (2007). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Maniscalo*, 627 F. Supp.2d at 499. Claims that are not supported with sufficient factual allegations shall be dismissed.

B.     Analysis

1.     Count 1: Breach of Contract

Plaintiff alleges Defendants breached the Agreement by improperly calculating or failing to calculate the Final Option Value; improperly linking the investments to side pockets; failing to provide Plaintiffs with information supporting the valuations; and failing to pay Plaintiff in settlement of the option. (Compl. ¶¶ 53-59.) Defendants argue that the Complaint fails to plead sufficient facts to establish these alleged breaches of the Agreement.

As set forth above, Plaintiff alleges that when it terminated the Agreement in September 2008, RBC was then obligated to determine the Final Option Value in good faith and in a commercially reasonable manner, and then pay Plaintiff that amount within five business days. (*Id.* ¶¶ 15-18, 28.) Plaintiff alleges that at the time of the termination RBC determined the Option Value to be approximately $27 million, and that RBC should have paid Plaintiff this amount. (*Id.* ¶¶ 19, 29.) However, RBC has paid Plaintiff only $7.6 million and claims that it has been unable to determine the final value of some of the investments. (*Id.* ¶ 19, Exs. G &H.)   Yet, RBC has continued to produce interim Option Values. (*Id.* ¶¶ 30-34.) Moreover, RBC has not provided Plaintiff with information on how it determined the investments' values and why and how it is unable to determine the final value for some components of the option. (*See, e.g., id.* ¶¶ 22, 30-34.) Thus, Plaintiff

alleges these acts and omissions amount to breach of the Agreement. (*Id.* ¶¶ 53-59.)

Defendants contend that Plaintiff has failed to state a claim because they have no obligation to make payments to Plaintiff until they determine the Final Option Value. Defendants are correct that pursuant to the Agreement the interim Option Value is not the Final Option Value. The interim Option Value is an estimated value that may be adjusted for a variety of factors including liquidity restrictions. The Final Option Value, which may also be estimated to some extent, should be determined as the amount a hypothetical investor would actually receive upon fully liquidating the investments and does not, for example, reflect valuation uncertainty or liquidity restrictions . (*See id.* Ex. A §§ 5 & 6.) Defendants argue that because they have hedged their risks by actually making the investments that comprise the option, the best evidence of what a hypothetical investor would receive is the amount that Defendants themselves actually receive for their investments. However, because certain of the investments are now illiquid Defendants cannot determine what they will receive and, thus, cannot determine the Final Option Value. Accordingly, they argue, RBC is not in breach because it is not yet obligated to make payments to Plaintiff for those components of the option.

Defendants' argument falls short, however, because it fails to address the crux of Plaintiff's Complaint  - that Defendants' valuation method is not in good

faith or commercially reasonable, as required by the terms of the Agreement. RBC bargained for a cash settled option to relieve itself of the obligation to own the underlying investments. Thus, the Agreement contemplates that RBC would determine the Final Option Value without having to liquidate the investments. The Agreement also states that once a final valuation is determined for a particular component, that component is "deemed to be" cash. (*Id.* Ex. A § 6.) The term "deemed" indicates that the component is not actually cash and, therefore, that the parties did not intend for a final valuation to be determined by the actual cash received from the liquidation of the component. Further, while RBC is correct that it is not obligated to adopt the interim Option Value, the fact that RBC was able to calculate those values is probative of whether another valuation method would be commercially reasonable and, by inference, whether RBC's chosen method is commercially unreasonable, i.e., in breach of the Agreement. The Court hastens to note that the Agreement does not require that RBC choose the most commercially reasonable valuation method. However, Plaintiff is entitled to discovery to support the allegation that Defendants' conduct is commercially unreasonable. Accordingly, Defendants' motion to dismiss the breach of contract claim will be denied.

One aspect of Plaintiff's breach of contract claim shall be dismissed, however. Plaintiff alleges Defendants breached "the Agreement by linking Plaintiff's investment to the performance of 'side pockets' which were never

authorized by Plaintiff." (*Id.*¶ 58.) Plaintiff's Complaint is bereft of allegations relating to these "side pockets" such as, when and how the option was linked to them, or why such a link was in breach of the Agreement. In short, there are no facts "to suggest the required element[s]" of a claim for breach of contract with respect to "side pockets." *Phillips*, 515 F.3d at 233. Accordingly, with regard to "side pockets," Plaintiff's breach of contract claim will be dismissed without prejudice.

### 2.    Count Two: Breach of Fiduciary Duty

Plaintiff also alleges RBC breached its fiduciary duties of loyalty, due care, and good faith because RBC had sole discretion or judgment to, among other things, determine the Final Option Value. (Compl. ¶¶ 61-75.) Plaintiff alleges that the same acts alleged to be breaches of the Agreement were breaches of RBC's fiduciary duties. (*Compare id.* ¶¶ 53-59 *with* ¶¶ 61-75.) RBC seeks to dismiss the claim arguing that the agreement explicitly disclaims that it was a fiduciary and that Plaintiff has failed to set forth a separate duty apart from the contractual Agreement, as required by New York law.

The Agreement expressly provides that Defendants are "not acting as a fiduciary for or as an advisor to [Plaintiff] in connection with this Transaction." (*Id.* Ex. A § 11 at 14.) The provision refers to Plaintiff as "Buyer" and Defendants as "Seller." (*Id.*) The Agreement defines "Transaction" as the November 22, 2002 sale of the option to Plaintiff. (*See id.* Ex. A.) Plaintiff does not allege that Defendants

12

breached their fiduciary duties in connection with the sale of the option to Plaintiff, but rather that RBC breached its fiduciary duty in the manner in which it performed its obligations under the Agreement, namely the valuation of the option.

The Agreement is ambiguous as to whether the parties intended to deny the existence of a fiduciary relationship with regard to entering into the Transaction *or* to both entering into the Transaction and RBC's performance under the Agreement. *See, e.g., AJW Partners v. Cyberlux Corp.*, 873 N.Y.S.2d 231, 2008 WL 4514171, *3 (N.Y. Sup. Ct. 2008) (finding no fiduciary duty where agreement disavowed such relationship "with respect to this agreement *and the transactions contemplated hereby*" (emphasis added)). Hence, this ambiguity precludes a dismissal of Plaintiff's fiduciary duty claim based upon the terms of the Agreement.

The Court turns next to whether Plaintiff has pled sufficient facts to state a claim for breach of fiduciary duty. A cause of action for breach of fiduciary duty must allege a duty separate and apart from, or in addition to, the duty imposed by contract in order to survive dismissal. *LaSalle Hotel Lesee, Inc. v. Marriott Hotel Servs., Inc.*, 816 N.Y.S.2d 347, 348 (N.Y. App. Div. 2006); *Layden v. Boccio*, 686 N.Y.S.2d 763, 764 (N.Y. App. Div. 1998).

> A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice *for the benefit of another* upon matters within the scope of the relation. Put differently, [a] fiduciary relation exists when confidence is reposed on one side and

there is resulting superiority and influence on the other. Ascertaining the existence of such a relationship inevitably requires a fact-specific inquiry.

*Eurcleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 980 (N.Y. 2009) (emphasis added; internal citations and quotation marks omitted). Because a fiduciary duty is separate and apart from, or in addition to, contractual duties, it is entirely possible that a breach of a contractual obligation may also constitute the breach of a fiduciary duty arising out of the relationship created by the contract.

Here, Plaintiff has alleged only conclusory statements that "[t]he Agreement established a fiduciary duty owed by Defendants to Plaintiff, by virtue of the unusual degree and confidence placed upon Defendants" to use their sole discretion and judgment to make various determinations. (Compl. ¶¶ 64-65.) The existence of a fiduciary relationship is a fact-specific inquiry, however, and Plaintiff alleges no facts to support the conclusion that the Agreement reposed in Defendants the obligation to exercise their discretion and judgment *for Plaintiff's benefit. See Eurcleia Partners*, 910 N.E.2d at 980. The Agreement clearly grants Defendants discretion in certain matters, and the incorporated definitions require Defendants to utilize such discretion in good faith and in a commercially reasonable manner. The Complaint alleges no facts, however, that Defendants agreed that such discretion was to be utilized solely for Plaintiff's benefit, or that Plaintiff indicated to Defendants that it was reposing its confidence that

14

Defendants would utilize such discretion for their benefit. Accordingly, Plaintiff has failed to state a cause of action for breach of fiduciary duty. This claim will be dismissed without prejudice.

      3.      Counts Three through Five: Unjust Enrichment, Breach of the Covenant of Good Faith and Fair Dealing, and Equitable Accounting and Constructive Trust

Plaintiff alleges RBC has been unjustly enriched by its retention of amounts rightfully due to Plaintiff under the Agreement. Plaintiff also alleges Defendants breached the implied covenant of good faith in the manner in which the Final Option Value is calculated and by withholding information from Plaintiff. Plaintiff also seeks an equitable accounting and constructive trust to determine and sequester the amounts rightfully due to Plaintiff under the Agreement. Defendants seek dismissal of all of these claims on the grounds that these are merely breach of contract claims recast as quasi-contract, which is generally prohibited under New York law.

      a.      Breach of the Covenant of Good Faith and Fair Dealing

Under New York law, all contracts contain an implicit covenant of good faith and fair dealing. Plaintiff alleges RBC breached this implied covenant by seeking to deny Plaintiff the benefits of the Agreement. (Compl. ¶ 86.) Specifically, Defendants failed to pay Plaintiff the Final Option Value as required by the Agreement; failed to adopt the interim Option Value; failed to discuss the valuations; failed to provide Plaintiff with information; failed to link Plaintiff's

investment to the correct investments; and failed to properly calculate the value of the Basket. (*Id.*¶¶ 87-93.) Defendants correctly note that these acts mirror those alleged in the breach of contract claim.

A claim for breach of the implied covenant of good faith and fair dealing arises when a party exercises a contractual right as part of a scheme to realize gains that the contract implicitly denies or to deprive the other party of the fruit of its bargain. *Moran v. Erk*, 901 N.E.2d 187, 190 (N.Y. 2008). For example, where a party has a right to exercise its judgment or discretion, it may not do so "solely for personal gain in such a away as to deprive the other party of the fruits of the contract." *Richbell Info. Servs., Inc. v. Jupiter Partenrs, L.P.*, 765 N.Y.S.2d 575, 587 (N.Y. App. Div. 2003) (*citing*, *inter alia*, *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (N.Y. 1995)). Unless the complaint alleges sufficient facts to establish these elements, the claim is merely a repetition of the breach of contract claim and will be dismissed. *See Cerberus Int'l., Ltd. v. BancTec, Inc.*, 791 N.Y.S.2d 28, 30 (N.Y. App. Div. 2005).

Here, Plaintiff's breach of contract claim and breach of the covenant of good faith claim allege exactly the same acts. The complaint does not allege additional facts that would support the conclusion that RBC's method of valuing the option is part of a scheme to deprive Plaintiff of the benefits of the Agreement, or was chosen solely to benefit RBC. *See, e.g., Moran,* 901 N.E.2d at 187. While a claim for breach of the covenant of good faith may co-exist with a claim of breach of

16

contract, Plaintiff has failed to allege sufficient facts that would establish the elements of the claim. Accordingly, this claim will be dismissed without prejudice.

### b.   Unjust Enrichment

Plaintiff alleges Defendants have been unjustly enriched by their retention of approximately $20 million owed to Plaintiff. Defendants argue that this claim is also duplicative of the breach of contract claim.

A claim for unjust enrichment is an equitable remedy often described as "quasi-contract" and applies in the absence of an express agreement. *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Company*, 516 N.E.2d 190, 193 (N.Y. 1987). The claim itself requires plaintiff to establish, "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001).

"[A] party may not recover in quantum meruit or unjust enrichment where the parties have entered into a contract that governs the subject matter." *Cox v. NAP Construction Co., Inc.*, 891 N.E.2d 271, 278 (N.Y. 2008) (*citing Clark-Fitzpatrick*, 516 N.E.2d at 193); *see also Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp.2d 296, 305 (E.D.N.Y. 2010). However, the claim may be pled as an alternative grounds for relief when there is a dispute as to whether a valid contract exists, *Joseph Sternberg, Inc. v. Walber 36th Street Assocs.*, 594 N.Y.S.2d 144, 145-

17

46 (N.Y. App. Div. 1993), or no breach of contract claim at all, *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004). For purposes of this motion, the parties do not dispute that the Agreement is a valid and enforceable contract. Therefore, while Plaintiff asserts its claim as one made in the alternative, in the absence of a dispute as to the validity of the Agreement this claim must be dismissed as duplicative of the breach of contract claim. Accordingly, this claim will be dismissed without prejudice.

### c. Equitable Accounting and Constructive Trust

Plaintiff seeks an equitable accounting and constructive trust over the monies owed Plaintiff on account of RBC's fiduciary duties to Plaintiff. In support of this claim, Plaintiff alleges it lacks of an adequate legal remedy because it is unclear whether Defendants' valuations are accurate and because the "accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." (Compl. ¶¶ 96-99.) These allegations are otherwise unsupported with specific factual allegations establishing RBC's fiduciary duty to Plaintiff (as noted above), why and how RBC's valuations are inaccurate, and why the transaction Plaintiff entered into with RBC is now beyond the parties' ken and requires "a court of equity [to] satisfactorily unravel" it.

Under New York law, "[a] constructive trust requires a showing of a confidential or fiduciary relationship, a promise, a transfer of property in reliance on that promise and unjust enrichment." *Sharper v. Harlem Teams for Self-Help,*

18

*Inc.*, 696 N.Y.S.2d 109, 111 (N.Y. App. Div. 1999) (*citing Sharp v Kosmalski*, 351 N.E.2d 721 (N.Y. 1976)); *see also Palazzo v. Palazzo*, 503 N.Y.S.2d 381 (N.Y. App. Div. 1986) (holding that common law claim for an equitable accounting requires a fiduciary relationship or other special circumstance). Moreover, equitable accounting and constructive trust claims will be rejected where an adequate legal remedy exists. *Clark-Fitzpatrick*, 516 N.E.2d at 193 ; *Briggs v. Goodyear Tire & Rubber Co.*, 79 F. Supp.2d 228, 236 (W.D.N.Y. 1999). As previously noted, Plaintiff has failed to adequately allege that RBC had a fiduciary duty to Plaintiff, that RBC has been unjustly enriched, or that the breach of contract claim is an inadequate remedy. Plaintiff's conclusory statements will not suffice. Accordingly, Plaintiff's constructive trust and equitable accounting claim will likewise be dismissed without prejudice.

### 4. Count Six: Negligence

Plaintiff alleges a claim of negligence asserting that RBC did not exercise due care in performing its duties under the Agreement. Plaintiff's allegations otherwise mirror those of its breach of contract claim. *Compare* Compl. ¶¶ 53 - 59 *with* ¶ 106.) Defendants seek dismissal of this claim on the grounds that it is duplicative of Plaintiff's breach of contract claim.

It is well settled under New York law that "merely alleging that the breach of a contract duty arose from a lack of due care will not transform a simple breach of contract into a tort." *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y.

1992). "[W]here the plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." *Id.* The Court cannot discern in Plaintiff's opposition any argument contrary to RBC's position that the negligence claim is merely the breach of contract claim dressed up as a tort. Moreover, Plaintiff's negligence claim does not allege RBC possessed any duty other than its obligations under the Agreement, and does not allege any remedy other than to enforce the terms of the Agreement. Plaintiff's negligence claim is merely a repetition of its breach of contract claim. Accordingly, Plaintiff's negligence claim will be dismissed without prejudice.

     5.    Counts Seven and Eight: Securities And Common Law Fraud

     Plaintiff's Complaint asserts a claim for securities fraud, pursuant to 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, and for common law fraud arising out of RBC's allegedly linking the option to various "side pockets." (Compl. ¶¶ 108-122.) As noted above, Plaintiff's Complaint lacks any factual allegations regarding "side pockets," including basics such as what "side pockets" are, and when and how the option was allegedly linked to these side pockets. The Complaint lacks "any factual matter (taken as true) to suggest' the required element[s]" of the securities and common law fraud claims. *See Phillips*, 515 F.3d at 233. Accordingly, these claims will be dismissed without prejudice.

IV.   CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss will be denied with respect to Count One and granted with respect to Counts Two through Eight. Plaintiff may amend the Complaint within 30 days, if it so desires. Further, the Court will hold a telephone conference on this matter on December 9, 2010. An appropriate Order will issue this date.


Dated: December 2, 2010

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge