<u>NOT FOR PUBLICATION</u>                                              [Dkt. No. 33]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| HEALEY ALTERNATIVE INVESTMENT PARTNERSHIP,<br><br>          Plaintiff,<br><br>     v.<br><br>ROYAL BANK OF CANADA and RBC DOMINION SECURITIES CORPORATION a/k/a RBC CAPITAL MARKETS CORPORATION,<br><br>          Defendants. | Civil No. 10-1567<br>    (RMB)(KMW)<br><br><br>OPINION |

Appearances:

    Jack L. Kolpen
    Joseph M. Pastore III
    Brian W. Song
    Fox Rothschild LLP
    997 Lenox Drive, Building 3
    Lawrenceville, NJ 08648-2311
        Attorneys for Plaintiff

    Scott A. Resnik
    Bruce G. Vanyo
    William M. Regan
    Katten Muchin Rosenman LLP
    575 Madison Avenue
    New York, NY 10022-2585
        Attorneys for Defendants

**BUMB**, United States District Judge:

I.   INTRODUCTION

Plaintiff Healey Alternative Investment Partnership ("Plaintiff" or "Healey") filed a complaint (the "Original Complaint") alleging eight causes of action arising out of an option contract purchased from Defendants Royal Bank of Canada and RBC Dominion Securities Corporation (collectively, "Defendants" or "RBC"). Defendants moved to dismiss the Original Complaint.  This Court granted the motion, in part, and denied it, in part, allowing Plaintiff the opportunity to file an amended complaint.  Healey Alt. Inv. P'ship v. Royal Bank of Can., Civ. No. 10-1567, 2010 WL 5055804 (D.N.J. Dec. 2, 2010). Plaintiff then filed an amended complaint (the "Amended Complaint") asserting three causes of action: (i) breach of contract; (ii) breach of fiduciary duty; and (iii) breach of the covenant of good faith and fair dealing.  Defendants again moved to dismiss pursuant to Federal Rule Of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted, in part, and denied, in part, with respect to the breach of contract claim, and granted, in full, with respect to the remaining claims.

II.  BACKGROUND[1]

    A.   The Parties

Plaintiff purchased a call option from Defendants. (Am. Compl. ¶¶ 5-8.)  The parties memorialized the option's terms in a Cash-Settled Equity Barrier Call Option agreement (the "Agreement"), dated November 29, 2002. (Id. ¶ 8, Ex. A.)  The Agreement is governed by New York law.  (Id. Ex. A at 17.)

    B.   The Agreement

Under the Agreement, the value of Plaintiff's call option (the "Option Value") was linked to the performance of a "Basket" of hedge funds, cash, and any other moneys provided to Defendants that were not originally allocated to hedge funds (the "Unallocated Amount"). (Am. Compl. ¶ 14.)  Plaintiff retained the right to effect changes to the Basket, subject to RBC's approval, and was entitled to exercise the option at any point by written notice to RBC. (Id. ¶ 20, Ex. A §§ 9, 10.)

        1.   Settlement Of Option

Traditionally, a call option affords the buyer the right, but not the obligation, to purchase a good or financial instrument at a set price - the strike price.  Plaintiff's call option, in contrast, was cash-settled, meaning that if the value of the Basket exceeded the strike price and Plaintiff exercised

---

[1]    The allegations contained in the Amended Complaint are accepted as true for purposes of the motion to dismiss.

the option, Defendants would settle the option by paying Plaintiff an amount of cash equal to that difference. (Id. Ex. A §§ 6, 7.)

A cash-settlement option was essential to the Agreement because RBC would not necessarily own the items in the Basket. (Am. Compl. ¶ 15.) RBC instead retained the right to hedge the risk that the Option Value would increase by actually investing in the hedge funds in the Basket. (Id.) RBC in fact exercised that right by purchasing the funds in the Basket. (Id. ¶ 41.)

### 2. Option Valuation

Periodically, RBC determined the Option Value and reported the value to Healey. (Id. ¶ 36.) This value was determined by adding the liquid components of the Basket to a calculation of the non-cash assets of the Basket. The value of the non-cash assets was determined by RBC:

> in its sole judgment . . . based in whole or in part upon, among other things, verbal or written statements produced by the Hedge Fund[s], and/or estimates of such valuation by [RBC] in its sole judgment, and which may include adjustments by [RBC] to reflect valuation uncertainty, liquidity restrictions and/or any and all other factors determined by [RBC] in its sole judgment to be necessary or appropriate to accurately reflect the estimated liquidation value . . .

(Id. Ex. A § 5 at 5.)

A final valuation would be determined only upon exercise of the option. (Am. Compl. ¶ 18.) To establish the "Final Option Value," RBC added the value of (i) each hedge fund in the Basket;

4

(ii) each non-cash distribution of a Hedge Fund; and (iii) cash and any Unallocated Amount. (Id. ¶ 30.) The hedge fund and non-cash distribution calculations were both made in RBC's "sole discretion." (Id. ¶¶ 31, 33, Ex. A § 6.) The former was calculated based on the amount:

> that actually would be received upon complete and final settlement of liquidation or redemption by a hypothetical beneficial owner thereof assuming such beneficial owner properly submitted a notice of full liquidation or redemption to such Hedge Fund on the [Termination] Date with instructions to liquidate or redeem such Hedge Fund as soon as possible . . . .

(Id. Ex. A § 6)  The latter was based on the amount:

> that actually would be received by a hypothetical beneficial owner thereof as of the complete and final settlement of such non-cash distribution which is liquidated on the Expiration Date or as soon as practicable thereafter.

(Id.)

While these values were to be determined at RBC's "sole discretion," definitions incorporated by reference in the Agreement indicate that RBC was obligated to make its determinations "in good faith and in a commercially reasonable manner." (Am. Compl. ¶¶ 9, 35, Ex. A, Ex. C, and see also Ex. D.) RBC's determinations are "binding in the absence of manifest error." (Id. ¶ 35, Ex. D.)[2]

---

[2]  This Court previously held that Plaintiff was entitled to proceed with discovery on its breach of contract claim based on its allegation that Defendants' conduct was commercially unreasonable. Healey Alt. Inv. P'ship v. Royal Bank of

For any Basket component for which a final calculation has been determined, "such component shall be deemed to be and

---

Can., Civ. No. 10-1567, 2010 WL 5055804, at *4 (D.N.J. Dec. 2, 2010).  Defendants now contest the applicability of the commercial reasonableness provision based on: (1) language in the Agreement that the Option Value is to be determined at Defendants' sole discretion and reviewed for manifest error; (2) language in the Agreement that, in the event of an inconsistency between the incorporated definitions that provide the basis for the reasonableness requirement and the Agreement itself, the language of the Agreement controls; and (3) language in the parties' Termination Agreement that Defendants are entitled to determine the Option Value in their "sole and absolute discretion" notwithstanding any other language to the contrary.  Defendants contend that the "sole discretion" and review for "manifest error" provided for in the Agreement and Termination Agreement are fundamentally inconsistent with the commercial reasonableness requirement and, therefore, Defendants are not bound by any commercial reasonableness requirement.  This Court disagrees.  Because there is no inherent inconsistency between the discretion afforded by the Agreement and Termination Agreement on the one hand and the commercial reasonableness requirement on the other, Defendants are bound by the commercial reasonableness requirement incorporated by reference in the Agreement.  See CFIP Master Fund, Ltd. v. Citibank, N.A., 738 F. Supp. 2d 450, 456 (S.D.N.Y. 2010)(swaps contract called for party to make selections "'in its sole discretion (acting in a commercially reasonable manner)'"); United States v. The Math Works, Inc., No. Civ.A. 02-888-A, 2003 WL 1922140, at *2 (E.D. Va. Mar. 6, 2003)(agreement provided that trustee would serve "on such customary and commercially reasonable terms and conditions as the United States, in its sole discretion, proposes, subject to approval by the Court."); Duff v. McGraw Hills Cos., No. C02-1347RSL, 2006 WL 2165913, at *4 (W.D. Wash. July 28, 2006) (contract provided party with "absolute and sole discretion on all matters regarding the manner and extent" of, among other things, marketing and distribution but party was also required to "use commercially reasonable efforts" in its marketing and distribution).

6

thereafter reflected as Cash . . . ."  (Am. Compl. ¶ 32, Ex. A § 6.)

### 3. Disbursement of Cash Settlement

Once the Option was exercised, Defendants were required to pay Plaintiff on a rolling basis once a month, as the final valuations of the components of the Basket were determined, to the extent those valuations exceeded the strike price.  (Am. Compl. ¶ 28, Ex. A § 7.)  Should the value of the Option change subsequent to these payouts, the parties were obligated to reconcile the difference.  (Id. Ex. A § 11.)

### C. Plaintiff Liquidates The Basket And Exercises The Option

On September 19, 2008, Plaintiff requested via e-mail that its remaining positions in the Basket be redeemed and converted to cash.  (Am. Compl. ¶ 21.)  The e-mail indicates Plaintiff sought to redeem all funds as of the next available redemption dates and sooner where it would be allowed, and that it hoped to work to reduce any applicable withdrawal penalties.  (Id. Ex. E.)  RBC did not withhold its consent for Plaintiff's requested liquidation. (Am. Compl. ¶ 21.)  Shortly after Plaintiff's request, on September 30, 2008, Defendants provided Plaintiff with a monthly report estimating the Option Value at $21,814,436.81.  (Id. ¶ 36.) Plaintiff formally terminated the Agreement on June 30, 2009.  (Id. ¶ 22.)  To date, Defendants have paid $9,157,000 to Plaintiff.  (Id. ¶ 24.)

   D.   <u>Side Pockets</u>

   According to the Amended Complaint, some of Defendants' hedges are subject to highly illiquid "side pockets." (<u>Id.</u> ¶ 41.)  Defendants have purportedly claimed that certain hedge funds have "hold backs" on redemptions until the side pockets are sold or valued, preventing the value of the funds from being known. (<u>Id.</u>)  Plaintiff further alleges that Defendants have failed to assert their rights to receive distributions from Hedge Funds where "side pockets" are being maintained.  (<u>Id.</u> ¶ 43.)  Plaintiff claims that the side pocket investments were unauthorized.  (<u>Id.</u> ¶ 52.)

   E.   <u>The Dispute</u>

   Having elected to liquidate the basket in September 2008, Plaintiff claims entitlement to the full Option valuation listed in the September 2008 report, over $12 million more than it has thus far received. (<u>Id.</u> ¶ 24.)  Defendants claim that they are properly paying out Plaintiff, that any obligation to pay Plaintiff is predicated on determination of final valuation prices, that such a determination is impossible with certain investments due to the lack of liquidity of the investments, and that Defendants have no obligation to pay Plaintiff until their own redemption requests on these investments are satisfied.  (<u>Id.</u> Exs. I, J.)  Plaintiff's position, however, is that it is entitled to payment regardless of any hold backs affecting

Defendants, that Defendants have failed to act in a commercially reasonable manner, and that Defendants have failed to explain why the September 2008 valuation report is no longer accurate. (Am. Compl. ¶¶ 38, 45.)

III. MOTION TO DISMISS

    A.    <u>Standard</u>

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Sheridan v. NGK Metals Corp.</u>, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (quoting <u>Iqbal</u>, 129 S.Ct. at 1949).

The Court conducts a three-part analysis when reviewing a claim:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010)(quotations and citations omitted); <u>see also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009)(" . . . [A] complaint

9

must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").

    B.   <u>Analysis</u>

        1.   <u>Count 1: Breach of Contract</u>

In order to state a plausible claim of breach of contract under New York law - the law that, by the parties' agreement, governs their contractual relationship - a plaintiff must allege the existence of a contract, that the plaintiff performed its own obligations under the contract, breach by the defendant of a specific contractual obligation, and damages resulting from the breach. <u>Bahner + Co., Inc. v. White Rose Food, Inc.</u>, No. 09-2640, 2010 WL 3210689, at *4 (D.N.J. Aug. 11, 2010)(applying New York law); <u>Phillips v. Am. Int'l Grp., Inc.</u>, 498 F. Supp. 2d 690, 695 (S.D.N.Y. 2007) (applying New York law and holding that the "Complaint cannot be construed to state a viable cause of action sounding in breach of contract because the Complaint does not allege any contractual provision upon which this claim is plausibly based.").

Plaintiff alleges Defendants breached the Agreement by: (a) failing to provide amounts due and owing to Plaintiff; (b) failing to adopt the determinations made in the September 2008 valuation or make new determinations; (c) refusing demands by Plaintiff for information regarding valuation; (d) linking the performance of the investment to the performance of illiquid

"side pockets" without Plaintiff's knowledge or permission; and (e) improperly calculating the value of the hedge funds contained in the basket. (Am. Compl. ¶¶ 62-68.) Defendants argue that the Amended Complaint fails to plead sufficient facts to establish these alleged breaches of the Agreement.

>   a.   Failure To Provide Amounts "Due And Owing Plaintiff"

Plaintiff claims that Defendants breached this alleged obligation under the Agreement in two respects: (1) by failing to return moneys "due and owing" to Plaintiff that are subject to hold backs; and (2) by failing to return moneys "due and owing" to Plaintiff in a commercially reasonable manner. Defendants argue that they are not obligated under the Agreement to return portions of the Basket that are subject to hold backs and have no obligation to act in a commercially reasonable manner.

As to Defendants' first argument, the Court disagrees. The Agreement's plain terms all signal an intent that Defendants determine the Option valuation, and make payments to Plaintiff, on a prospective basis, irrespective of whether Defendants' own investments are subject to hold backs. The terms:

(1)  did not require Defendants to actually own the investments in the Basket (Agreement § 11, "Seller's Hedging Activity");

(2)  did not require Defendants to liquidate their own investments in the Basket in the event Defendants actually owned the investments in the Basket and Plaintiff liquidated (Agreement § 7);

11

    (3)    called for a calculation of the amount that Plaintiff <u>would</u> receive upon liquidation (Agreement § 6, "Final Valuation Price");

    (4)    deemed investments that had been valued to be cash (Agreement § 6, "Final Valuation Price"); and

    (5)    called for reconciliation in the event of changes to a hedge fund's performance post-payout (Agreement § 11, "Subsequent Change to Final Option Value").

These terms all demonstrate that Plaintiff's investment was intended to be decoupled from the actual performance of investments made by Defendants.

    As to Defendants' latter argument, the Court has already rejected Defendants' argument that Defendants had no obligation under the Agreement to make their determinations in a manner and time frame that is in good faith and commercially reasonable. Plaintiff has set forth sufficient factual allegations, taken as true, to plausibly suggest that Defendants have breached these specific contractual obligations.

    The facts that, Defendants regularly produced monthly valuations, that it has been years since Plaintiff ordered the liquidation of the Basket, and that the redemption dates listed in Plaintiff's email have long past, all suggest that Defendants could have made payout determinations and completed its payouts to Plaintiff far earlier. Plaintiff has therefore plausibly alleged that Defendants breached the Agreement by failing to make payout determinations prospectively and by failing to make determinations in a good faith and commercially reasonable

manner.³  Accordingly, Plaintiff is entitled to proceed on this claim and pursue related discovery on whether Defendants have made their calculations, and corresponding payouts, of what is "due and owing" to Plaintiff on a prospective basis and in a good faith and commercially reasonable manner.³

                b.    Failure To Adopt the September 2008 Report Or Make New Determinations

---

[3]   While Defendants dispute any commercial reasonableness requirement, Defendants concede in their briefing that they are bound to act in a "good faith" manner and do not have truly unfettered discretion under the Agreement.  They are correct to do so.  <u>Fishoff v. Coty Inc.</u>, 634 F.3d 647, 653 (2d Cir. 2011) ("Under New York law, a covenant of good faith and fair dealing is implied in all contracts. . . . Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion. . . . A breach of the duty of good faith and fair dealing is considered a breach of contract.")(quotations and citations omitted).  The same facts that support the conclusion that Defendants have failed to act in a good faith and commercially reasonable manner also plausibly suggest a breach of contract for failure to operate in "good faith" under the Agreement.  Plaintiff's "due and owing" breach of contract claim is therefore entitled to survive on this basis also.

[3]   In determining the commercial reasonableness of Defendants' conduct, whether Defendants themselves have been able to redeem an investment is <u>not</u> a proper factor because the Agreement itself envisions prospective payouts.  However, investment illiquidity, or other factors that could cause hedge fund hold backs or otherwise make determination of a final Option valuation more difficult, could potentially be appropriate factors in assessing the reasonableness of Defendants' conduct, depending on the evidence adduced in discovery.

As indicated above, to the extent Plaintiff seeks that Defendants make new determinations, Plaintiff is entitled to proceed on its claim that Defendants have failed to make new determinations in a commercially reasonable time frame.

However, Plaintiff has failed to plausibly allege that Defendants breached the Agreement by failing to adopt the September 2008 Report valuation. That claim is contradicted both by Plaintiff's own allegations and the documentary evidence attached to the Amended Complaint – both of which are properly considered on this motion to dismiss. Goldenberg v. Indel, Inc., 741 F. Supp. 2d 618, 624 (D.N.J. 2010)(holding that on a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.")(quoting Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004)). Based on the Amended Complaint and attached exhibits, the September 2008 report would have been created using the then existing valuations, when the funds in the Basket could not be redeemed until, in many cases, several months into the future. The information concerning the proper valuation of the Basket following Plaintiff's September 2008 liquidation, as alleged, would have been far different by June of 2009, when Plaintiff officially terminated the Option, and in the months

thereafter. Accordingly, Plaintiff cannot plausibly claim entitlement to the September 2008 Report valuation.

### c. Plaintiff's Demands For Information

Plaintiff has failed to allege, or reference in its brief, any contractual provision requiring Defendants to provide it with any of the requested information. Accordingly, Plaintiff's breach of contract claim based on Defendants' alleged failure to provide Plaintiff with certain information requested by Plaintiff is dismissed. Phillips v. Am. Int'l Grp., Inc., 498 F. Supp. 2d 690, 695 (S.D.N.Y. 2007)(applying New York law and holding that the "Complaint cannot be construed to state a viable cause of action sounding in breach of contract because the Complaint does not allege any contractual provision upon which this claim is plausibly based.").

### d. Plaintiff's Side Pocket Claim

The Amended Complaint alleges that "Defendants breached their duties and obligations under the Agreement by linking the performance of Plaintiff's investment to the performance of illiquid 'side pockets' which Defendants chose to invest, without Plaintiff's knowledge or permission." (Am. Compl. ¶ 67.)

To the extent Plaintiff's side pocket claim is based on Defendants' failure to return moneys allegedly in side pockets and subject to hold backs, that claim is subsumed within Plaintiff's "due and owing" claim, which this Court has already

15

ruled may go forward. To the extent Plaintiff's side pocket claim is based on Defendants' alleged failure to obtain the authorization of Plaintiff before investing in side pockets, Plaintiff has failed to allege in the Amended Complaint, or reference in its brief, any provision of the Agreement obligating Defendants to obtain such approval.

Plaintiff's own interpretation of its claim, as outlined in its brief, is that Defendants violated a provision in the Agreement limiting their ability to change the composition of the Basket, by tying the valuation of the Basket to the performance of the allegedly unauthorized side pocket investments. The parties dispute whether, even if, as alleged, the value of the Basket was tied to the alleged side pocket investments, it would constitute an unauthorized change to the Basket in breach of the Agreement.

It is unnecessary to resolve that dispute at this time. While the Amended Complaint alleges that Defendants invested in side pockets (Id. ¶ 50), and cites to one example (Id. ¶ 52), it fails to offer factual allegations, as opposed to conclusory statements, that plausibly support its claim that Defendants incorporated the value of any of their alleged side pocket investments into their valuation of the Basket. Accordingly, Plaintiff's side pocket based breach of contract claim is dismissed.

16

    e. Improper Calculation Of The Basket

For the reasons stated above, Plaintiff is entitled to proceed on its claim that Defendants have failed to calculate the Basket's value in good faith and in a commercially reasonable manner.

   2. Count Two: Breach of Fiduciary Duty

Plaintiff also alleges that RBC breached its fiduciary duties of loyalty, due care, and good faith by, among other things, refusing Plaintiff's requests for information, improperly calculating the value of the funds in the Basket, and failing to secure the timely return of the funds. (Am. Compl. ¶¶ 79-82.)

This Court previously dismissed Plaintiff's fiduciary duty claim because Plaintiff had failed to offer concrete factual statements, as opposed to conclusory allegations, that Defendants had a duty to act, or to give advice, for the benefit of Plaintiff, as required to establish a fiduciary relationship between Plaintiff and Defendants. <u>Healey Alt. Inv. P'ship v. Royal Bank of Can.</u>, Civ. No. 10-1567, 2010 WL 5055804, at *5-6 (D.N.J. Dec. 2, 2010). Plaintiff's Amended Complaint similarly fails to offer more than conclusory allegations to support a fiduciary relationship. (<u>compare</u> Am. Compl. ¶¶ 70-82 with Compl. ¶¶ 61-74.)

Because Plaintiff has failed to buttress its allegations with facts sufficient to support the conclusion that the

Agreement reposed in Defendants the obligation to exercise their discretion and judgment for Plaintiff's benefit, Plaintiff's fiduciary duty claim is dismissed. See Eurcleia Partners, LP v. Seward Kissel, LLP, 910 N.E.2d 976, 980 (N.Y. 2009).

### 3. Breach Of The Covenant Of Good Faith And Fair Dealing.

Under New York law, all contracts contain an implicit covenant of good faith and fair dealing. Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (N.Y. 1995). Plaintiff alleges RBC breached this implied covenant by seeking to deny Plaintiff the benefits of the Agreement. (Am. Compl. ¶ 86.) Specifically, Plaintiff alleges that Defendants abused their discretion "by waiting to see what an actual investor would receive upon liquidation", failing to pay amounts due and owing under the Agreement, failing to provide Plaintiff with financial information despite Plaintiff's requests, and making erroneous valuation calculations. (Id. ¶¶ 86-91.)

This Court previously dismissed Plaintiff's claim for breach of the covenant of good faith and fair dealing because Plaintiff was required, and failed, to allege facts that supported an independent good faith and fair dealing claim, non-duplicative of Plaintiff's breach of contract claim. Healey Alt. Inv. P'ship v. Royal Bank of Can., Civ. No. 10-1567, 2010 WL 5055804, at *6-7 (D.N.J. Dec. 2, 2010).

Because Plaintiff's good faith and fair dealing claim again merely re-hashes Plaintiff's breach of contract claim, Plaintiff's good faith and fair dealing claim is dismissed. <u>Peabody v. Weider Publ'ns, Inc.</u>, 260 F. App'x 380, 383-84 (2d Cir. 2008)(affirming dismissal of good faith and fair dealing claim as duplicative of breach of contract claim under New York law, where "the complaint allege[d] precisely the same facts for both claims."); <u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 81 (2d Cir. 2002)("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim based, based upon the same facts, is also pled.").

IV.  CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss will be **DENIED,** in part, with respect to Count One and **GRANTED** with respect to Counts Two and Three.  Because it does not appear that the Amended Complaint's deficiencies may be cured by an amendment, Plaintiff must seek leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).


Dated: September 23, 2011

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge