**Katten**
Katten Muchin Rosenman LLP

575 Madison Avenue
New York, NY 10022-2585
212.940.8800 tel
212.940.8776 fax

WILLIAM M. REGAN
william.regan@kattenlaw.com
(212) 940-6541 direct
(212) 894-5521 fax

December 28, 2012

**VIA ECF AND FEDERAL EXPRESS**

Honorable Karen M. Williams
United States Magistrate Judge
United States District Court for the
 District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room 1050
Camden, NJ 08101

Re:   Healey Alternative Investment Partnership v. Royal Bank of Canada, et al.
      Case No. 1:10-01567 (RMB) (KMW)

We represent defendant Royal Bank of Canada ("RBC") in the above captioned action. On December 14, 2012, the Court held a telephone discovery conference to consider the proper scope of discovery in this action and address plaintiff Healey Alternative Investment Partnership's ("Healey") request to file a motion to compel. During that conference, Your Honor directed RBC to submit additional data to demonstrate the burden that would be imposed on RBC if the Court allows the discovery that Healey is seeking.

RBC has run search terms previously used in the files of its relevant document custodians to determine the size of the resulting dataset that would need to be reviewed in order to produce the additional discovery Healey is seeking and has estimated the cost of performing such a review and production.[1] As shown in the tables below, the searches returned extremely large datasets which would require extensive review at considerable cost, all of which would be vastly disproportionate to the limited relevancy of the additional discovery sought.

**Documents Prior to September 2008**

Based on the allegations in Plaintiff's Amended Complaint, and the Court's opinion on RBC's motion to dismiss, the key date in this case is September 19, 2008, the date that Healey asked RBC to change the Basket by moving all of Healey's invested capital from certain listed

---

[1] To date, RBC has produced more than 107,000 bates stamped pages for the period September 1, 2008 through March 2011 (as compared to 687 pages produced by Healey). Healey, however, is seeking discovery for the period "January 1, 2008 though at least August 2012." *See* Plaintiff's December 7, 2012 correspondence to the Court, at ¶ 2.

Honorable Karen M. Williams
December 28, 2012
Page 2

hedge funds to cash (on a specified schedule and subject to certain specified penalties). This concerns not the parties' conduct generally, but the manner in which RBC calculated Final Option Value and Final Valuation Price (as those terms are defined in the November 22, 2002 Cash-Settled Equity Barrier Call Option Agreement), which by definition post-dates the September 2008 email. Documents and emails from prior to September 2008 are not relevant to any party's existing claims and defenses, and Healey's requests for such information are not proportionate to the cost and burden RBC would be required to incur to produce the same.

The table below shows the data results for two alternative periods based on the Court's questions at the December 14, 2012 conference: (i) January 1, 2008 to August 1, 2008 (the admittedly "arbitrary" date range currently sought by Healey); and (ii) June 1, 2008 to August 31, 2008 (a date range starting from when the Amended Complaint alleges that Healey began to "deleverage" its investment):

| Date Range | Responsive "Hits" | Total Gigabytes[2] | Estimated Cost to Review and Produce[3] | Estimated Cost Assuming 75% De-Duplication |
|---|---|---|---|---|
| January 1, 2008 - August 31, 2008 | 1576 | 119.8 GB | $2,156,400 - $3,594,000 | $539,100 - $898,500 |
| June 1, 2008 - August 31, 2008 | 610 | 50.3 GB | $905,400 - $1,509,000 | $226,350 - $377,250 |

As shown above, the searches for the pre-September 2008 time period resulted in a massive amount of data. The enormous size of these datasets, and exorbitant cost to review and

---

[2] Gigabyte totals are not de-duplicated, which can only be done after the total dataset is processed by our ESI vendor. The final column in this table shows the estimated costs assuming that 75% of the data is eliminated through the de-duplication process. It is widely recognized in the ESI industry that de-duplication estimates are more or less pure guesses and that the actual amount of de-duplication will vary widely from dataset to dataset. As such, the 75% figure used in this letter is for illustration purposes only.

[3] The tables in this letter use estimated review costs of $18,000 to $30,000 per GB to reflect the low and high ranges commonly used in the ESI industry. *See, e.g.* Nicholas M. Pace, Laura Zakaras, Where the Money Goes – Understanding Litigant Expenditures for Producing Electronic Discovery, Rand Institute for Civil Justice, 19-20 (December 27, 2012), *http://www.rand.org/content/dam/rand/pubs/monographs/2012/RAND_MG1208.pdf*; Doug Austin, eDiscovery Best Practices: Does Size Matter?, (December 27, 2012, 3:00 pm), http://www.ediscoverydaily.com/2011/03/ediscovery-best-practices-does-size-matter.html; Winston & Strawn LLP, e-Discovery Series: Rule 26(f) Meet and Confer Strategies, 4 (December 27, 2012), http://www.winston.com/siteFiles/News/3.10_Presentation%20on%20Rule%2026(f)%20and%2016(b)_e Lunch.pdf.

Honorable Karen M. Williams
December 28, 2012
Page 3

produce even the shorter time period, is not justified given the irrelevance of the information sought.

Moreover, RBC has been and continues to be willing to produce a focused subset of the documents from this period. Indeed, RBC long ago offered to produce its "core redemption file"[4] for all funds referenced in the September 2008 Basket Report, for the period June 1, 2008 through March 23, 2012. This offer was subsequently memorialized in the Courts December 27, 2012 Order (the "Discovery Order"), and RBC is in the process of collecting this material. RBC has further offered to produce all email correspondence between itself and Healey/Viking going back to January 1, 2008, as well as search its internal emails for the terms "@healey.com" or "@viking.com" regardless of where those terms appear in the document. While Healey declined to accept these proposals, RBC believes that such target production is much more appropriate and proportionate given the limited relevance of the material sought in this period.

**Post-Litigation Documents Subsequent to March 2011**

The second group of documents sought by Healey is ESI generated from March 2011 to August 2012. Healey filed its initial complaint in this action on March 26, 2010 and its amended complaint on January 18, 2011. As shown in the table below, the cost and burden associated with searching for and reviewing ESI material generated after the two complaints were filed (which overwhelmingly will be comprised of privileged material relating to the pending litigation) far outweighs any possible benefit associated with the locating additional and marginally relevant after-the-fact emails.

| Date Range | Responsive "Hits" | Total Gigabytes | Estimated Cost to Review and Produce | Estimated Cost Assuming 75% De-Duplication |
|---|---|---|---|---|
| March 24, 2011 - March 23, 2012[5] | 19,239 | 50.5 GB | $909,000 - $1,515,000 | $227,250 - $378,750 |

The searches for ESI in the post-March 2011 time period result in an enormous dataset, which would subject RBC to even more overwhelmingly disproportionate costs to review and produce.

---

[4]   The "core redemption file" contains, for each fund in the basket: (i) RBC's internal hedge fund redemption ticket (which starts the redemption process); (ii) RBC's redemption request submitted to the funds; and (iii) the funds' response to RBC's redemption requests.

[5]   Date of 26(f) conference.

Honorable Karen M. Williams
December 28, 2012
Page 4

      Moreover, RBC has already produce material from this time period, including all of the "core redemption files" through June 2012 for the relevant funds. RBC had furthered offered to produce other material from this time period, including all electronic correspondence and related attachments between RBC and the relevant hedge funds for the period March 23, 2011 through March 23, 2012, which was memorialized in the Discovery Order, and which RBC is in the process of collecting. Further still, RBC offered to update any particular report found in RBC's previous production that Healey found relevant or useful through this time period, and further offered to consider conducting specific targeted searches suggested by Plaintiff. Plaintiff declined to accept each of these proposals.

* * *

      As highlighted above, the additional discovery Healey seeks potentially requires RBC to review hundreds of gigabytes of material outside of the relevant time period, at a cost which could soar into the millions of dollars. Such requests appear to be calculated to impose on RBC wasteful and unnecessary litigation expenses, and clearly run afoul of the mandate of proportionality set forth in the Federal Rules. RBC is not attempting to stonewall Healey's discovery. It has, to date, produced over 107,000 bates stamped pages, is preparing to produce additional ESI as outlined in the Discovery Order, and stands by the additional compromise proposals offered to Healey.

      RBC is available to more fully brief and address these issues in whatever format would be helpful to the Court.

Respectfully submitted,

*William Regan /BLM*

William M. Regan

cc: All Counsel of Record (via ECF)