

**Fox Rothschild LLP**
ATTORNEYS AT LAW

75 Eisenhower Parkway, Suite 200
Roseland, NJ 07068-1600
Tel 973.992.4800  Fax 973.992.9125
www.foxrothschild.com

Ernest Edward Badway
Direct Dial: (973) 994-7530
E-mail Address: ebadway@foxrothschild.com

April 22, 2013

**VIA ECF**

Honorable Renée Marie Bumb
United States District Judge
Mitchell H. Cohen U.S. Courthouse
1 John F. Gerry Plaza
Camden, New Jersey 08101

      Re:    **Healey v. RBC, Case No.: 1:10-01567 (RMB) (KMW)**

Dear Judge Bumb:

    Plaintiff Healey Alternative Investment Partnership ("Healey"), respectfully, submits this letter pursuant to the Court's instructions during the telephone conference held on April 8, 2013, with defendants Royal Bank of Canada and RBC Dominion Securities Corporation a/k/a RBC Capital Markets Corporation (collectively, "RBC").

**I.    The September 2011 Opinion Recognized the Hypothetical Nature of the Investment**

    This Court recognized Healey's "Basket" as a hypothetical, individually-negotiated option investment that was not connected to any actual investment that RBC owned, made, or was obligated to make. RBC breached the Agreement by failing to perform its contractual duties in a commercially reasonable manner. In both its opinions, this Court rejected RBC's Motions to Dismiss, dated December 2, 2010, D.E. 23 ("12/2/10 Opinion") and September 23, 2011, D.E. 44 ("9/23/11 Opinion").

    These Opinions focused on the hypothetical nature of Healey's option investment. The Court noted that the parties' Agreement did not require RBC to actually own the *hedge funds referenced in the Basket* or liquidate its own investments if RBC actually owned the Basket's funds when Healey made changes. Thus, it is impossible for RBC to claim an actual investment is determinative of the value since there is no support that RBC made an actual investment for Healey. Further, the Agreement required: (a) a calculation of the amount that Healey would receive when it exercised its option; (b) deemed investments that RBC valued as cash; and (c) a reconciliation if there were changes to a hedge fund's performance post-payout (*See* 9/23/11 Opinion at 11-12). The Court, therefore, recognized that Healey's investment was not tied to any actual investments owned by RBC. "The Agreement's plain terms all signal an intent that [RBC] determine the Option Valuation, and make payments to [Healey], on a prospective basis, irrespective of whether [RBC's] own investments are subject to hold backs." (*Id.* at 11).



Fox Rothschild LLP
ATTORNEYS AT LAW

Honorable Renée Marie Bumb
April 22, 2013
Page 2

Further, the Court found that "[Healey's] investment was intended to be decoupled from the actual performance of investments made by [RBC]." (*Id.*). Accordingly, the Agreement required RBC "to make [its] determination in a manner and time frame that is in good faith and commercially reasonable," (*id.*) – not at its leisure when it actually recoups money from the funds that it unilaterally chose to invest in to hedge its own risk. It is vitally important to recognize that RBC was not a "broker" investing on Healey's behalf. RBC's flawed position is that it may hold Healey's money indefinitely, purportedly based on its own inability to collect on investments that *it was not even required to maintain*. In fact, RBC's own calculations indicate that it has not paid Healey over $3 million dollars, years after the investment was terminated.

## II. The 9/23/11 Opinion Does Not Foreclose the September 2008 Values

Given the above, the Court has preliminarily concluded that "[RBC] could have made payout determinations and completed its payouts to [Healey] far earlier." (*See* 9/23/11 Opinion, p. 12). This is the foundation of Healey's claim and should not be disturbed by this Court on a Motion to Dismiss without proper discovery or a determination by a fact finder. Healey argues that RBC's failure to make payouts "far earlier" constitutes a breach of the Agreement. The central question the Court answered in its 9/23/11 Opinion was if the failure to pay by RBC in September 2008 constituted a breach *per se*. Now, that is no longer under scrutiny, instead, the remaining issue is when could and should RBC have "made payout determinations and completed its payouts to [Healey]." Answering this question will depend on the proof adduced during discovery and at trial. An important piece of evidence is the 2008 Valuation Report issued by RBC, indicating an "Option Value" of approximately $21,814,000 in September 2008 when Healey exercised the option ( "September 2008 Option Value").

Healey is not arguing that failure to pay the September 2008 Option Value constitutes a *per se* contractual breach; instead, the September 2008 Option Value must be viewed in light of the hypothetical nature of Healey's investment. Since the Basket did not contain the hedge funds themselves, Healey's Option always had a value. RBC was not required to actually invest in the funds, thus, the valuation of funds *was not possibly dependent* on actual cash redemptions to RBC; rather, the value was based on the reported monthly returns of the individual funds. Based on these returns, RBC *actually did provide a* "final" "Option Value" on its Valuation Report for Healey's option each and every month, regardless of RBC's redemption from individual funds. This "Option Value" was comprised of a "final" valuation for each fund, represented by an asterisk at the end of each fund's row in the monthly Basket Report. Thus, Healey relied upon this final valuation in September 2008 when it decided to terminate the option and settle up in cash. Essentially, RBC made the final valuation of Healey's option at the end of September 2008, and all that remained was for RBC to apply this value to the cash side of Healey's option. Healey never bargained with or agreed to permit RBC to delay this valuation so that it could wait to redeem anything or wait to be paid by any fund since Healey's investment was not tied to an actual investment. In sum, RBC had everything it needed as of September 2008 to settle up in cash and pay Healey, but it chose to avoid this obligation.



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Honorable Renée Marie Bumb
April 22, 2013
Page 3

     Healey, respectfully, submits that RBC is myopically reading this Court's Opinions to preclude a valuation based upon the September 2008 reports. Although the Court held that Healey cannot rely on RBC's failure to adopt the September 2008 Option Value as a breach in and of itself, it does not logically follow that the September 2008 Option Value is not probative as to the actual final valuations for Healey's option. Healey's position is reinforced by the Court's 12/2/10 Opinion, where the Court stated that "the Agreement contemplates that RBC would determine the Final Option Value *without having to liquidate the investments*," and that "while RBC is correct that it is not obligated to adopt the interim Option Value, the fact that RBC was able to calculate those values *is probative* of whether another valuation method would be commercially reasonable, and by inference, whether RBC's chosen method is commercially unreasonable." (*See* 12/2/10 Opinion at 11) (emphasis added). In fact, RBC's method of delaying a valuation until it redeems its own investments is not commercially reasonable, and, therefore, looking to the September 2008 Option Value is probative *to determine* the Final Option Value and should not be discounted merely because its failure to be paid was not a breach of the Agreement.

     Accordingly, if the 9/23/11 Opinion is to be clarified (without the benefit of a hearing and the submission of evidence after discovery and depositions), the Court should only indicate that RBC's failure to adopt the September 2008 Report did not *per se* constitute a breach. Healey has the right to submit to the trier of fact for its final determination if the September 2008 Option Value is probative as to the Final Option Value (and, indeed, whether the same reflected RBC's actual determination of final value). Healey's analysis is supported by the fact that the Court *squarely rejected RBC's theory of the case*, namely that RBC does not need to pay Healey until RBC itself gets paid by the hedge funds.[1] The Court rejected this position in no uncertain terms when it wrote, "[i]n determining the commercial reasonableness of [RBC's] conduct, whether [RBC] themselves have been able to redeem an investment is not a proper factor because the Agreement itself envisions prospective payouts." (9/23/11 Opinion at 11) (emphasis in original).

     In sum, this Court's Opinions have: (i) rejected RBC's valuation theory, and (ii) broadly permitted Healey to prove a breach and the proper valuation method. At minimum, the use of the September 2008 Option Value may be probative for the jury in this matter, and not suitable to a resolution on a new interpretation of a previously decided motion to dismiss. We thank the Court for its consideration of this matter.

Respectfully submitted,

Ernest Edward Badway

---

[1] Additionally, despite RBC's counsel's comment during this Court's telephone conference, an adoption of RBC's interpretation of this Court's prior opinion will not make a settlement more likely. In fact, such a determination will probably necessitate an appeal of any judgment.