# Katten
Katten Muchin Rosenman LLP

575 Madison Avenue
New York, NY 10022-2585

WILLIAM M. REGAN
william.regan@kattenlaw.com
(212) 940-6541 direct
(212) 894-5521 fax

April 22, 2013

Honorable Renee Marie Bumb
United States District Court Judge
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room 1050
Camden, NJ 08101

**Re:    Healey v. Royal Bank of Canada, et al. Case No. 1:10-01567 (RMB) (KMW)**

Dear Judge Bumb:

Defendant Royal Bank of Canada ("RBC") respectfully submits this letter brief in connection with the Court's decision to clarify its September 23, 2011 opinion and order (the "Opinion") resolving RBC's motion to dismiss. *See* Docket No. 33.

Healey's Amended Complaint asserted multiple breach of contract theories, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. *See* Docket No. 26. In the Opinion, the Court expressly dismissed Healey's claims that RBC breached the Agreement by: (i) failing to adopt the estimates listed in the September 2008 Valuation Report; (ii) refusing Healey's demands for information; or (iii) linking the investment to "side pockets." *See* Op. at 13-16. The Court also dismissed the fiduciary duty and good faith and fair dealing claims. *Id.* at 17-19. The Court found that discovery was warranted on one narrow issue: whether RBC breached by failing to determine new valuations in good faith and in a commercially reasonable manner for those hedge funds listed in Healey's September 19, 2008 email that instituted holdbacks or otherwise did not pay out on the schedule set forth by Healey. *Id.* at 11-13.

RBC believes that the Court's Opinion narrowed and defined the scope of this litigation. In its September 19, 2008 email, Healey requested the liquidation of sixteen specific funds. For those funds that paid out in accordance with Healey's redemption schedule, Healey cannot seek damages and there are no open issues. For those funds that failed to pay on time due to holdbacks or liquidity concerns, the parties are to litigate the extent to which the "commercial reasonableness" requirement obligated RBC, at some point in time subsequent to the June 30, 2009 Termination Date, to use a different methodology (other than the usual hedge fund redemption process) to determine Final Valuation Price.

*Points To Confirm*

Healey's core allegation in the Amended Complaint is that it is owed $21,814,436.81 (the amount shown on the September 2008 Valuation Report) because Healey sent RBC an email on

Honorable Renee Marie Bumb
April 22, 2013
Page 2

September 19, 2008 requesting that RBC redeem sixteen specific hedge funds from Healey's Basket. *See* AC, ¶¶ 34, 36 and 38. The Court unequivocally rejected this claim, holding that: "Plaintiff has failed to plausibly allege that Defendants breached the Agreement by failing to adopt the September 2008 Report valuation… the September 2008 report would have been created using the then existing valuations, when the funds in the Basket could not be redeemed until, in many cases, several months into the future. The information concerning the proper valuation of the Basket following Plaintiff's September 2008 liquidation, as alleged, would have been far different by June of 2009, when Plaintiff officially terminated the Option, and in the months thereafter. Accordingly, Plaintiff cannot plausibly claim entitlement to the September 2008 Report valuation." Op. at 14 - 15 (emphasis added).

Moreover, the Court emphasized that Healey was not entitled to any valuation prior to the June 30, 2009 Termination Date. *Id.* at 4 ("A final valuation would be determined only upon exercise of the option."); *Id.* at 7 ("Once the Option was exercised, Defendants were required to pay Plaintiff on a rolling basis once a month…".) (emphasis added).

RBC believes that the Court will materially expedite this litigation if it simply confirms that the above statements means exactly what they say – that Healey has no claim for and may not recover the amount shown on the September 2008 Valuation Report and was not entitled to any valuation prior to the June 30, 2009 Termination Date.

*Points to Clarify*

In sustaining the one breach of contract theory, the Court observed that the Call Option Agreement appeared to "signal an intent" that RBC was required to make payments "on a prospective basis" and that Healey's investment was "intended to be decoupled" from any hedging investments made by RBC. Op. at 11-12. The Court further noted that "whether Defendants themselves have been able to redeem an investment is not a proper factor." *Id.* at 13, n. 4. Healey spins these statements to argue that it somehow is entitled to recover the amount shown on the September 2008 Valuation Report because that amount is "prospective" or "decoupled" from any hedging activity by RBC.[1] The Court may wish to clarify the terms "prospective" and "decoupled" to eliminate any potential ambiguity.

---

[1] Healey's assertion that RBC actually calculated Final Option Value in the September 2008 Basket and Valuation Report is contradicted by the plain text of those reports, which state that the data provided is "for information purposes only," that RBC has not "independently verified the accuracy of the information," and that the values reported by the individual funds are "likely to be materially different" from the values determined by RBC.

Honorable Renee Marie Bumb
April 22, 2013
Page 3

      Contrary to Healey's view, RBC understands the Court's ruling regarding the "prospective" and "decoupled" nature of Healey's investment to mean that RBC cannot argue that Healey gets paid only when RBC gets paid. That, however, is not and never has been RBC's position. RBC's position is that, as required by the definition of Final Valuation Price, Healey is entitled the same amount ultimately received by a hypothetical investor who submitted redemption requests on the same day that Healey submitted its redemption requests.

      To illustrate, Healey requested that RBC submit a redemption request to the Taliesin Capital Partners hedge fund on 12/31/08. Assume that RBC and Investors A, B and C are the only investors who submitted redemption requests to Taliesin on that date:

      Option 1:  If Taliesin paid RBC and Investors A, B, and C in full and on time, RBC would have been able to value Healey's investment. *See* Agreement, § 7 (p. 7) ("the amount that actually would be received upon complete and final settlement…")

      Option 2:  If Taliesin did not pay anything to RBC or Investors A, B and C due to a holdback or liquidity problem, then RBC would have had no basis to determine the value of Healey's investment. *See* Op. at 13, n. 4 ("investment illiquidity, or other factors that could cause hedge fund holdbacks…could potentially be appropriate factors").

      Option 3:  If Taliesin elected to pay Investors A, B and C in full but to withhold payment from RBC due to an unrelated business dispute, RBC would still have been required to value Healey's investment because, as the Court found, the investment is "prospective" or "decoupled" from RBC's hedging activity.

Option 2 is the reality with respect to Taliesin and every other fund that remains in Healey's Basket - RBC has been unable to determine Final Valuation Price because those funds have withheld payment from all investors who submitted redemption requests on the same date that Healey instructed RBC to submit its requests. The Court's conclusion about "prospective" and "decoupled" payments does not mean that Healey is entitled to the September 2008 Valuation Report; it means only that if Option 3 had occurred (which it did not), RBC could not rely on such non-payment as an excuse for not valuing Healey's investment.

Respectfully submitted,

*/s/ William M. Regan*
William M. Regan