**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10022
T:  (212) 940-8800
F:  (212) 940-8776

*Attorneys for Defendants Royal Bank of Canada*
*and RBC Dominion Securities Corporation*
*(n/k/a RBC Capital Markets, LLC)*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –x

|  |  |
|---|---|
| HEALEY ALTERNATIVE INVESTMENT PARTNERSHIP, | : |
| Plaintiff, | : |
| vs. | : |
|  | : No. 10-01567 (RMB) (KMW) |
| ROYAL BANK OF CANADA and RBC DOMINION SECURITIES CORPORATION n/k/a RBC CAPITAL MARKETS, LLC, | : MOTION DATE: November 4, 2013 |
| Defendants. | : |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL**

*Oral Argument Requested*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................. 3

I.    Healey Should be Compelled to Produce Documents That Demonstrate
      Healey's Valuation of the Call Option, Including Tax Returns, General
      Ledgers and Monthly Accounting Statements. ......................................................... 3

II.   Healey's Responses to RBC's Interrogatories Are Insufficient. ........................... 6

III.  Healey Failed to Make a Good Faith Attempt to Answer RBC's Requests
      for Admission and Therefore All of RBC's Requests Should be Deemed
      Admitted. ............................................................................................................. 10

CONCLUSION .......................................................................................................... 16

<u>**TABLE OF AUTHORITIES**</u>

CASES

*Barton v. RCI LLC*,
    Civil Action No. 10-3657 (PGS), 2013 WL 1338235 (D.N.J. April 1, 2013)..........................9

*Int'l Paper Co. v. Rexam, Inc.*,
    Civil Action No. 11-6494 (JAP), 2013 WL 3043638 (D.N.J. June 17, 2013)......................4-5

*Langer v. Monarch Life Insurance Co.*,
    966 F.2d 786 (3d Cir. 1992)....................................................................................................11

*Rhodes v. Marix Servicing, LLC*,
    Civil Action No. 3:12-1636(MAS), 2013 WL 4494978 (D.N.J. Aug. 19, 2013)....................9

RULES

Fed. R. Civ. P. 26 ................................................................................................................1, 5, 9

Fed. R. Civ. P. 33 ..............................................................................................................1, 9, 13

Fed. R. Civ. P. 34 ..........................................................................................................................1

Fed. R. Civ. P. 36 .....................................................................................................1, 10, 11, 15

Fed. R. Civ. P. 37 ..........................................................................................................................4

Rule 37.1 of the Local Rules of the United States District Court for the District of New
    Jersey...................................................................................................................................1, 3

OTHER AUTHORITIES

9C Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and
    Procedure* § 2252 (2010) ......................................................................................................11

Defendants Royal Bank of Canada and RBC Dominion Securities Corporation (n/k/a RBC Capital Markets, LLC) respectfully submit this memorandum of law and the Affidavit of William M. Regan, dated October 11, 2013 (the "Regan Aff."), in support of their motion to compel pursuant to Rule 37 of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiff Healey Alternative Investment Partnership ("Healey") has consistently taken the position that discovery in this case should be one-sided,[2] and that Healey should not be required to produce any documents or to provide any discovery responses that might in any way tend to undermine its claims and theories. Such a position is, of course, untenable and entirely inconsistent with scope of permissible discovery set forth in Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure.

Healey alleges in the Amended Complaint that RBC improperly valued the Cash-Settled Equity Barrier Call Option (the "Call Option") and has failed to pay all amounts due and owing under the parties' November 29, 2002 trade confirmation (the "Call Option Agreement"). In this motion, RBC seeks certain very narrow and specific discovery that goes to the core of these allegations.

---

[1]     Pursuant to Rule 37.1 of the Local Rules of the United States District Court for the District of New Jersey, RBC and Healey attempted to resolve their disagreement relating to Healey's failure to produce documents in letters dated September 10, 2013,  September 25, 2013, and October 2, 2013, and in a conference call held on September 30, 2013.  The parties attempted to resolve their disagreement with respect to Healey's evasive interrogatory answers in letters dated April 5, 2012, April 18, 2012, August 15, 2013 and August 28, 2013.  The Honorable Karen M. Williams authorized RBC to file this motion after hearing arguments during a status conference held on October 3, 2013.

[2]     Over the course of this litigation, Healey produced a grand total of 700 pages of documents relating to the Call Option.  RBC, in contrast, produced approximately 120,000 pages.  This Court should reject Healey's "undue burden" arguments based on this disparity, and the fact that Plaintiff employs a 15 – 20 person business unit tasked solely with managing the financial affairs of Healey and its principals and affiliates.

_First_, RBC seeks the production of specific documents described by Ernest Nepa, Plaintiff's chief financial officer, in his September 9, 2013 deposition testimony.  Healey is a single purpose entity that has owned one and only one asset throughout its entire existence – the Call Option at issue in this case.  Mr. Nepa testified that he prepared for Healey certain general ledgers, investor reports and tax returns that show values for the Call Option at different points in time in 2008 and 2009.  RBC believes that the value Mr. Nepa reported internally within Healey, to Healey's investors, and to the IRS is very different from the value of the Call Option that Plaintiff seeks to recover in this litigation.  It stands that, if Healey reported a loss to the IRS in 2009 and claimed a corresponding tax benefit, that tax return would be inconsistent with Healey's claim in this case that it terminated the Call Option in 2008 at a substantial profit.  The documents that Mr. Nepa identified are core discovery materials that should have long ago been produced to RBC.

_Second_, RBC seeks substantive answers to four of its interrogatories asking Healey to identify that methodology by which RBC was required to use, in Healey's view, to calculate Final Option Value as that term is defined in the Call Option Agreement.  In lieu of responding, Healey simply cut and pasted the definition of Final Option Value from the Call Option Agreement into its interrogatory responses and set forth impermissible conclusions of law.  RBC has told Healey how RBC performed the calculation (by submitting redemption notices and using the liquidation payments from the underlying hedge funds); three and a half years into this case it is time for Healey to identify the process that it believes RBC was supposed to follow under the Call Option Agreement.  Without this most basic discovery, RBC cannot fairly defend itself in this litigation.

_Finally_, RBC seeks actual good faith answers to its requests to admit.  After requesting and receiving a three-week extension in order to complete its responses, Healey simply refused to answer RBC's requests, imposed baseless and often conflicting objections, referred to documents

in lieu of answering, and frivolously claimed not to understand plain English terms such as "owned," "authorized" and "agent." As explained more fully below, because Healey did not make a good faith effort to answer the overwhelming majority of RBC's Requests, this Court should deem Healey to have admitted each and every Request to Admit served by RBC, not specifically affirmed or denied.

## **ARGUMENT**

I.   **Healey Should be Compelled to Produce Documents That Demonstrate Healey's Valuation of the Call Option, Including Tax Returns, General Ledgers and Monthly Accounting Statements.**

Healey's refusal to produce documents relating to its internal valuation of the Call Option is unreasonable and in violation of both the Federal Rules of Civil Procedure and the law governing discovery in this Circuit. During the deposition of Healey's CFO Ernest Nepa on September 9, 2013, RBC learned, for the first time, that Plaintiff maintains "books and records" that are relevant to the instant litigation. Specifically, Mr. Nepa testified that Healey maintains: (i) a general ledger; (ii) tax returns; (iii) reports sent to Healey's partners that include Healey's investment performance; (iv) monthly accounting statements; and (v) documents reflecting each partner's ownership percentage of Healey and the fair market value of those ownership interests. *See* Regan Aff., Ex. A at 69:7-71:2; 71:18-77:11; 183:15-23; 193:23-194:10. RBC called for the production of these documents (the "Supplemental Documents") at Mr. Nepa's deposition, and reiterated the request in correspondence to Healey dated September 10, 2013. *See* Regan Aff., Ex. B.

In its response over two weeks later, Healey declined to produce the requested documents, arguing that they were "not responsive to any requests served by RBC to date." *See* Regan Aff., Ex. C. On September 30, 2013, pursuant to New Jersey Local Civ. Rule 37(a)(1),

the parties conducted a teleconference in an attempt to resolve the discovery dispute. On October 2, 2013, Plaintiff confirmed its previous position and indicated that it would not produce the Supplemental Documents. *See* Regan Aff., Ex. D.

Healey sets forth a number of objections to producing the Supplemental Documents, including that: (i) the material sought is "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; " (ii) the Supplemental Documents were not called for in RBC's Document Requests; (iii) the material sought by RBC is "highly confidential;" and (iv) the production of the Supplemental Documents "would only delay this case further." *See* Regan Aff., Exs. C and D.

The Supplemental Documents are relevant and plainly discoverable as they go directly to Healey's core allegation in this action-that RBC improperly valued the Call Option . The Supplemental Documents demonstrate how Healey valued the Call Option for the purposes of filing its tax returns, maintaining its day-to-day business records, and reporting performance to its investors. RBC believes that the Supplemental Documents will reflect that during the relevant periods, Healey accepted and indeed affirmed RBC's valuation of the call-option, and that the current dispute as to RBC's valuation and its methodologies are an after-the-fact litigation strategy with no support in any documentation. By way of example, if Healey reported a loss to the IRS in 2009 and claimed a corresponding tax benefit, that tax return would be inconsistent with Healey's claim in this case that it terminated the Call Option in 2008 at a substantial profit, and conversely, would support RBC's affirmative defenses.

Courts in this District construe Rule 26 "liberally, creating a broad vista for discovery." *Int'l Paper Co. v. Rexam, Inc.*, Civil Action No. 11-6494 (JAP), 2013 WL 3043638, at *3

(D.N.J. June 17, 2013) (internal quotation omitted).  Documents are relevant and should be produced "if there is any possibility that the information sought may be relevant to the general subject matter of the action."  *Id.* (citation omitted).

The Supplemental Documents also fall squarely within a number of specific requests within RBC's First Request for Production to Plaintiff, dated January 25, 2013 (the "Document Requests"), including  Request Nos. 2 and 3 (which call for "All Documents and/or Communications concerning Healey's calculation and/or understanding of Option Value and/or Valuation Price, as those terms are used in § 5 of the Agreement" and "All Documents and/or Communications concerning Healey's understanding and/or calculation of the Final Option Value and/or Final Valuation Price of Healey's Basket, as those terms are used in § 6 of the Agreement," respectively), and No. 11 (which calls for all documents and/or communications "reflecting any discussions between Healey and Viking as to Option Value, Valuation Price, Final Option Value, Final Valuation Price and/or any amount due and owing to Healey under the Agreement.")[3]  *See* Regan Aff., Ex. E.

There are no confidentiality concerns with respect to the production of any of the Supplemental Documents.  Healey was formed specifically to enter into the Call Option Agreement with RBC.  Healey never owned any other assets other than the Call Option.  In addition, the partners in Healey are all affiliated with Healey and include Robert T. Healey as

---

[3]    Even assuming *arguendo* that the Supplemental Documents are not responsive to RBC's original Document Requests, RBC formally asked for them in the letter dated September 10, 2013 (*see* Regan Aff., Ex. B), which was sent the day after E. Nepa's deposition.  Healey contends that it is now too late to ask for additional material, but Mr. Nepa was originally scheduled to be deposed on July 30, 2013.  Healey asked RBC to reschedule Mr. Nepa's deposition for mid-September because Mr. Nepa needed emergency back surgery.  That surgery never happened.  Without this delay caused solely by Healey, RBC would have learned of this material in late July or early August.

general partner, and the Healey Investment Partnership, the Healey Supporting Organization, and the International Maritime Insurance Company as limited partners.[4]

Finally, the production of specifically identified material, which Healey's own CFO has testified is maintained and available at Healey's offices, would take little time and involve even less burden.  Further, Plaintiff has previously cited the outstanding discovery request as a basis for extending discovery in its correspondence with the Court.  *See* Regan Aff., Ex. F. ("[B]oth RBC and Healey have requested additional documents from each other following certain depositions.  Both parties are currently considering each other's requests and Healey proposes that extending fact discovery to September 27, 2013 will give the parties the time they need to respond, object and/or produce the requested information.")

The Supplemental Documents are relevant to this litigation, responsive to RBC's Document Requests, contain no confidential material, and can be produced quickly and with little burden.  As such, Healey should be compelled to produce them.

## II.    Healey's Responses to RBC's Interrogatories Are Insufficient.

Healey's response to several of RBC's Interrogatories remain inadequate despite RBC's repeated requests for Healey to provide non-evasive answers that go to key issues in this case. RBC served Healey with its First Set of Interrogatories (the "Interrogatories) on or about January 25, 2012.  *See* Regan Aff., Ex. G.  Interrogatories Nos. 12 and 13 ask Healey to explain what method Healey believes RBC was required to use to calculate the Option Value, Valuation Price, Final Option Value, and/or Final Valuation Price, all of which are defined terms in the Call

---

[4]      Healey's alleged confidentiality concerns should be further allayed as a Discovery Confidentiality Order has been issued in this action, limiting the use and dissemination of confidential material produced. (*See* Docket Entry No. 56).

Option Agreement.  *Id.*  Interrogatory No. 14 asks Healey to identify any and all "commercially reasonable" processes for calculating Final Option Value and/or Final Valuation price.  *Id.*  And Interrogatory 15 asks Healey to state the basis for its contentions that RBC failed to determine Final Option Value and/or Final Valuation Price in a "commercially reasonable" manner.  *Id.*

Healey served its first set of answers and objections (the "First Answers") to the Interrogatories on March 19, 2012 and refused to answer Interrogatories Nos. 12-15.  *See* Regan Aff., Ex. H.   RBC requested that Healey supplement its answers (*See* Regan Aff., Ex. I), which Healey did on or around December 14, 2012 (the "Supplemental Answers").  Regan Aff., Ex. J.

Healey's Supplemental Answers, however, were equally deficient and evasive.  For Interrogatories Nos. 12-15, Healey merely parroted the definitions set forth in the Call Option and/or asserted legal conclusions.  For example, the First Supplemental Answer to Interrogatory No. 13 set forth:

> Subject to and without waiving any objection, Healey contends that under the Agreement, Defendants, among other things, were required to:
>
> • Determine values, including the Final Option Value and/or Final Valuation Price, on a prospective basis and in a timely, good faith, and commercially reasonable manner, by adding the liquid components of the Basket to a calculation of the non-cash assets of the Basket;
>
> • Determine a final valuation on a prospective basis and in a timely, good faith, and commercially reasonable manner upon exercise of the option;
>
> • Establish, on a prospective basis and in a timely, good faith, and commercially reasonable manner, the Final Option Value, by adding the value (which value was required to be determined on a prospective basis and in a timely, good faith, and commercially reasonable manner) of (i) each hedge fund in the Basket; (ii) each non-cash distribution of a hedge fund; and (iii) cash and any Unallocated Amount;
>
> • Abide by the Agreement's provision that "such component shall be deemed to be and thereafter reflected as Cash ... " in determining the Final Option Value and/or Final Valuation Price For and/or any Basket component for which a final calculation had been determined, or could have been determined had Defendants performed valuations on a prospective basis and in a timely, good faith, and commercially reasonable manner;

7

• Perform under the Agreement and make valuations, including in determining the Final Option Value and/or Final Valuation Price, on a prospective basis and in a timely, good faith, and commercially reasonable manner by in particular recognizing and giving force to the fact that the Agreement did not require Defendants to actually own the investments in the Basket;

• Perform under the Agreement and make valuations, including in determining the Final Option Value and/or Final Valuation Price, on a prospective basis and in a timely, good faith, and commercially reasonable manner by in particular recognizing and giving force to the fact that the Agreement did not require Defendants to liquidate their own investments in the Basket in the event Defendants actually owned the investments in the Basket and Healey liquidated;

• Perform under the Agreement and make valuations, including in determining the Final Option Value and/or Final Valuation Price, on a prospective basis and in a timely, good faith, and commercially reasonable manner by in particular recognizing and giving force to the fact that the Agreement required Defendants to calculate the amount that Healey would receive upon liquidation;

• Perform under the Agreement and make valuations, including in determining the Final Option Value and/or Final Valuation Price, on a prospective basis and in a timely, good faith, and commercially reasonable manner by in particular recognizing and giving force to the fact that the Agreement required Defendants to deem investments that had been valued (which valuation was required to be performed on a prospective basis and in a timely, good faith, and commercially reasonable manner) to be cash;

• Perform under the Agreement and make valuations, including in determining the Final Option Value and/or Final Valuation Price, on a prospective basis and in a timely, good faith, and commercially reasonable manner by in particular recognizing and giving force to the fact that the Agreement called for reconciliation in the event of changes to a hedge fund's performance post payout;

• Perform under the Agreement and make valuations, including in determining the Final Option Value and/or Final Valuation Price, on a prospective basis and in a timely, good faith, and commercially reasonable manner by in particular recognizing and giving force to the fact that the Agreement's terms demonstrate that Healey's investment was intended to be decoupled from the actual performance of investments made by Defendants; and

• Make all valuation determinations that were needed or integral to determining the Final Option Value and/or Final Valuation Price in a manner and time frame that is in good faith and commercially reasonable.[5]

---

[5]     The Supplemental Answers to Interrogatories 12, 14 and 15 set forth largely identical responses.

Critically, in none of these answers does Healey substantively describe the method or process that Healy contends RBC either was required to use or would have been commercially reasonable in using.

Interrogatories can seek any relevant information as defined by Federal Rule of Civil Procedure 26(b)(1), and "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ."  Fed. R. Civ. P. 33(a)(2).  A court requires a party to answer an interrogatories "[i]f the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues."  *Barton v. RCI LLC*, Civil Action No. 10-3657 (PGS), 2013 WL 1338235, at *3 (D.N.J. April 1, 2013); *accord Rhodes v. Marix Servicing, LLC*, Civil Action No. 3:12-1636(MAS), 2013 WL 4494978, at *2 (D.N.J. Aug. 19, 2013).

Healey's view of how RBC should have acted is the linchpin to its claims against RBC. Whether discovery is relevant "is viewed in light of the allegations of the complaint . . . ." *Barton*, 2013 WL 1338235, at *3 (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). However, Healey has provided no documents, e-mails, deposition testimony, or other written discovery to demonstrate what it believes RBC should have done in order to "act in good faith [and] a commercially reasonable manner."  AC, ¶ 1.

Without understanding Plaintiff's position as to what RBC was required to do under the Call Option, RBC cannot adequately defend itself against Plaintiff's claims.  *See Rhodes*, 2013 WL 4494978, at *3 (requiring supplemental responses to interrogatories where the party failed to provide sufficient information to put the opposing party "on notice of the 'who, what, when, where and why'" of assertions made in its pleadings).  Healey's reference to the exact language

from the Call Option Agreement sheds no light on what arguments Healey may make or on what documents Healey may rely.

Healey's refusal to provide sufficient and substantive answers to RBC's Interrogatories is particularly egregious given the stage of the litigation.  In the nearly three years since Healey filed its Amended Complaint, the parties have conducted significant discovery.  RBC has produced nearly 11,000 documents totaling roughly 120,000 pages, and the parties conducted thirteen depositions of key individuals from both RBC and Healey.  With the deadline for dispositive motions rapidly approaching, Healey can no longer refuse to tell RBC exactly Healey believes RBC should have done to calculate the value of the Call Option.

III.   **Healey Failed to Make a Good Faith Attempt to Answer RBC's Requests for Admission and Therefore All of RBC's Requests Should be Deemed Admitted.**

RBC served its First Set of Requests for Admission to Healey on August 12, 2013 (the "Requests").  *See* Regan Aff., Ex. K.  On August 13, 2013, Healey requested additional time to respond, and RBC agreed to extend Plaintiff's time to answer by more than three full weeks.  On October 4, 2013, Healey served RBC with its Answers and Objections to the Requests to Admit. *See* Regan Aff., Ex. L.  Notwithstanding the extension, Healey failed to provide substantive answers to the vast majority of requests posed by RBC.  Instead, Healey interposed baseless objections, feigned "confusion" and a lack of "understanding," and ignored requests where truthful responses would undermine its claims in this case.  Healey's responses are so deficient that they could not have been made in good faith, and the Court therefore should deem all of the Requests to be admitted.  *See* FRCP 36(a)(6).

Request for Admission served under FRCP 36 serve "two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to

issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." . *Langer v. Monarch Life Insurance Co.*, 966 F.2d 786, 803 (3d Cir. 1992)(*citing* Advisory Committee notes to the 1970 amendments). Rule 36's "provisions are not merely directory; substantial compliance is required." 9C Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2252 (2010) (internal citation omitted). When a "party is served with a request for admission of a fact that it now knows to be true, it must admit that fact, even if that admission will gut its case and subject it to summary judgment. That is what Rule 36 was intended to do-narrow the issues for trial, or even altogether obviate the need for trial." *Langer*, 966 F.2d at 803.

Here, Healey failed to fulfill its obligations in nearly every possible respect.[6] For the Court's convenient, the table below groups Healey's evasive answers into six categories:  (i) requests that Healey improperly refused to answer based on its assertion that certain plain English terms in the requests were "vague," "ambiguous," or not possible to "understand;" (ii) requests where Healey improperly referred to a document in lieu of answering; (iii) requests where Healey answered a request different from the one actually posed by RBC; (iv) requests that Healey improperly refused to answer on the ground that it lacked sufficient information (notwithstanding that RBC has produced nearly120,000 pages, the parties have conducted 13 depositions, and fact discovery is now closed); (v) requests that Healey improperly refused to

---

[6]     RBC does not at present seek additional information in response to Requests Nos. 1, 2-9, 12, 18, 19, 21-23, 25-27, 44-48, 53-54, 74-76 and 87-88.  The fact that RBC is not moving on these requests should not be deemed an admission or concession by RBC as to the accuracy or correctness of any of Healey's responses.  Indeed, many of Healey's answers are simply inexplicable and cannot have been made in good faith.  For example, the Termination Agreement signed (and authenticated) by Ernest Nepa, Healey's CFO, states that "[t]he purpose of this termination notice is to confirm Seller's and Buyer's mutual agreement to terminate the Transaction, at Buyer's request, as of June 30, 2009."  *See* Regan Aff., Ex. M.  Request No. 23 quotes this text verbatim, asking Healey to "admit that the purpose of the Termination Agreement is to confirm Healey's and RBC's mutual agreement to terminate the Call Option, at Healey's request, as of June 30, 2009."  Yet somehow Healey denied Request No. 23.

answer on the ground that the request was "compound;" and (vi) requests where Healey

improperly refused to admit to the authenticity of documents and that certain documents are

business records:

| Requests That Healey Improperly Refused To Answer Based On Its Assertion That Certain Plain English Terms In The Requests Were "Vague," "Ambiguous," Or Not Possible To "Understand" |
|---|
| <ul><li>Request No. 10 (Healey objects to "affiliated persons and entities" and "owned" as vague and ambiguous);</li><li>Request No. 11 (same);</li><li>Request No. 28 (Healey objects to "authorized officers" as "undefined and confusing");</li><li>Request No. 34 (Healey objects to "agent" as vague and ambiguous);[7]</li><li>Request No. 50 (Healey cannot "understand" the phrase "soliciting bids for those funds on a secondary market or through an auction");</li><li>Request No. 51 (Healey cannot "understand" the phrase "independent valuation expert");</li><li>Request No. 52 (Healey cannot "understand" the term "internal RBC pricing or valuation model");</li><li>Request No. 56 (Healey does not "understand" the term "escrow or segregated account");</li><li>Request Nos. 59, 62, 65, 68 and 71 (same).</li></ul> |

| Requests Where Healey Improperly Referred To A Document In Lieu Of Answering |
|---|
| <ul><li>Request No. 29 (request asks Healey to admit that it was an "accredited investor" at a stated point in time; Healey responds that the request "appears to refer to the content of a document that speaks for itself" and that the document "reflects [certain] language");</li><li>Request Nos. 30-33 (same);</li><li>Request No. 43 (request asks Healey to admit that it removed funds from the Basket not less than 100 times; Healey responds that "any removals are documented and those documents speak for themselves);</li></ul> |

---

[7]    Healey's refusal to admit that Viking was its agent with respect to the Call Option is particularly egregious because Healey signed a contract amendment the sole purpose of which was to appoint Viking as Healey's advisor under the Call Option Agreement. This document bears the heading "Agency Relationship." *See* Regan Aff., Ex. N.

- Request No. 55 (request asks Healey to admit that RBC paid a specific dollar amount on a stated date; Healey responds that "any payments made by RBC to Healey are documented and those documents speak for themselves");

- Request Nos. 58, 61, 64, 67, 70 and 73 (same).[8]

| **Requests Where Healey Answered A Request Different From The One Posed By RBC** |
|---|

- Request No. 20 (requests asks Healey to admit that it made a specific representation to RBC; Healey responds that a referenced document "reflects [certain] language");

- Request No. 24 (request asks Healey to admit that it "reviewed and executed" a particular document; Healey responds that the document "reflects that it was signed" by an individual);

- Request Nos. 35 and 36 (requests ask Healey to admit that a particular employee had authority to add or remove hedge funds to the Basket; Healey responds that the employee was "hired, in part, to monitor the Call Option and to ensure it was being administered properly by RBC and to transmit requests from Healey to change exposure to specific hedge funds");

- Request Nos. 37-42 (same);

- Request No. 57 (request asks Healey to admit that it did not advise RBC of any objection to a specified payment made on a particular date; Healey responds that it "raised multiple objections to the manner in which RBC was conducting itself under the Agreement…including the manner in which RBC made payments under the Agreement");

- Request Nos. 60, 63, 66, 69 and 72 (same).

| **Requests That Healey Improperly Refused To Answer On The Ground That It Lacked Sufficient Information, Notwithstanding That RBC Has Produced Approximately 120,000 Pages Of Documents, The Parties Have Conducted 13 Depositions, And Fact Discovery Is Now Closed** |
|---|

- Request No. 10 (request asks Healey to admit that Healey and its affiliated persons and entities owned assets in excess of $100 million at a specified point in time; Healey responds that "the information Healey knows or can readily obtain is insufficient to enable it to admit or deny this Request as stated");

---

[8]     Rule 33(d) of the Federal Rules of Civil Procedure, which governs interrogatory responses, permits a responding party to refer to and identify its own business records, in lieu of answering an interrogatory, when the burden of ascertaining the answer is the same for both the requesting party and the answering party.  Rule 36, which governs requests to admit, contains no similar provision.

- Request No. 11 (same);

- Request No. 49 (request asks Healey to admit that RBC removed hedge funds from the Basket only through the ordinary hedge fund redemption process or, if available, a "pair off"; Healey responds that it lacks sufficient information to respond);

- Request No. 77 (request asks Healey to admit that all of the hedge funds currently remaining in the Basket have either suspended redemptions, side pocketed assets, or are in liquidation mode; Healey responds that it lacks sufficient information);[9]

- Request Nos. 78-86 (requests ask Healey to admit to basic facts contained in the offering documents for the hedge funds in the Basket; Healey declines to answer on the ground that it lacks sufficient information).

| Requests That Healey Improperly Refused To Answer On The Ground That The Request Was "Compound" |
| --- |

- Request No. 13 (request asks Healey to admit to a verbatim copy of a specific representation that Healey made to RBC in the Call Option Agreement; Healey responds that "it is a compound question…that cannot be responded to");

- Request No. 16 (same);

- Request No. 17 (request asks, in its entirety, "[a]dmit that in Section 11 of the [Call Option] Agreement, Healey made representations to RBC"; Healey responds that the request is "confusing" and cannot be answered because Section 11 contains "multiple sub-parts").

| Requests Where Healey Improperly Refused To Admit To The Authenticity of Documents And that Certain Documents Are Business Records |
| --- |

- Request No. 89 (request asks Healey to admit that a copy of the Option Agreement is true and correct; Healey objects on the grounds that it is improper to seek authentication of documents produced by RBC from its own files);

- Request Nos. 90-114, 121-130, 133-136, 139-140, 143, 144-150, 153-156, 159-162, 165-166, 169-182, 185, 186-190, 193-206, 209, 210-242, 245-246, 249-280, 285-286, 299-302, 307-310, 315-320, 323-338, 343-346, 349-362  (same);

- Request No. 116 (requests ask Healey to admit that a document within its production was "generated and/or received" by Viking or Healey in the course of its business, and maintained among either of their business records; Healey objects on the grounds that it is a

---

[9]     Healey's contention that it lacks sufficient information to respond to requests seeking admissions relating to the underlying hedge funds is disingenuous; Healey issued subpoenas to all the funds that were in its Basket at any point in time since 2002.  *See* Regan Aff., Ex O.

> "compound questions and is therefore a completely improper request.")
>
> - Requests Nos. 118, 120, 132, 138, 142, 152, 158, 164, 168, 184, 192, 208, 244, 248, 282, 284, 288, 290, 292, 294, 296, 298, 304, 306, 312, 314, 340, 342, 348 (same).

Due to Healey's refusal to make a good faith effort to answer so many of the Requests for Admission, all Requests for Admission that Healey did not expressly admit or deny should be deemed admitted. *See* Fed. R. Civ. P. 36(a)(6) (providing that a court may order a matter admitted if a party's answers do not comply with Federal Rule of Civil Procedure 36).

## CONCLUSION

For the foregoing reasons, RBC respectfully request that this Court:  (i) order Healey to produce, for the relevant time period: (a) its tax returns; (b) its general ledgers; (c) all documents reflecting its monthly accounting; (d) all documents reflecting its ownership percentages and the fair market value of each of the limited partners interest in Healey; € its reports to investors; and (f) any and all additional unproduced material which reflects Healey's calculation and/or understanding of the Option Value, Valuation Price, Final Option Value, and/or Final Valuation Price (as those terms are used in the Agreement) and/or any amount due and owing to Healey under the Agreement; (ii) order Healey to supplement its interrogatory responses to provide meaningful responses to Interrogatories Nos. 12-15; and (iii) deem all of RBC's requests for admission to Healey that Healey did not expressly admit or deny as admitted by Healey.

Dated:  New York, New York
       October 11, 2013

**KATTEN MUCHIN ROSENMAN LLP**

By:   /s/ William M. Regan
     Scott A. Resnik
     William M. Regan
     Bruce G. Vanyo

     575 Madison Avenue
     New York, New York 10022-2585
     (212) 940-8800 (phone)
     (212) 940-8776 (fax)

     *Attorneys for Defendants Royal Bank of Canada*
     *and RBC Dominion Securities Corporation (n/k/a*
     *RBC Capital Markets, LLC)*