**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10022
T: (212) 940-8800
F: (212) 940-8776

*Attorneys for Defendants Royal Bank of Canada
and RBC Dominion Securities Corporation
n/k/a RBC Capital Markets, LLC*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HEALEY ALTERNATIVE INVESTMENT PARTNERSHIP,<br><br>       Plaintiff,<br><br> vs.<br><br>ROYAL BANK OF CANADA and RBC DOMINION SECURITIES CORPORATION n/k/a RBC CAPITAL MARKETS, LLC,<br><br>       Defendants. | No. 10-01567 (RMB) (KMW)<br><br>Motion Date: August 18, 2014 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

                                 *Oral Argument Requested*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I.    Healey's Opposition Confirms that the Court Should Grant Summary Judgment on the Issue of Commercial Reasonableness. ....................................................... 3

        A.    Commercial Reasonableness Can Be Decided as a Matter of Law. ............ 3

        B.    RBC Provided the Only Evidence of Industry Custom and Practice.......... 4

        C.    Healey Cannot Rehabilitate Its Expert......................................................... 5

    II.    Healey Confirms the Parties' Course of Conduct...................................................... 7

        A.    Healey Does Not Dispute that the Parties Uniformly Used the Ordinary Redemption Process to Redeem Funds from the Basket. ........................... 7

        B.    Healey's Purported Fact Issues Are Meaningless as a Matter of Law. ...... 8

    III.    Healey Cannot Continue to Ignore the Court's Prior Rulings. ............................. 10

CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

**Federal Cases**

*Bankers Trust Co. v. Dowler & Co.*,
    47 N.Y.2d 128 (1970) ...................................................................................................... 3

*Barco Urban Renewal Corp. v. Hous. Auth. of Atlantic City*,
    674 F.2d 1001 (2d Cir. 1982) ......................................................................................... 3-4

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*,
    957 F. Supp. 2d 316 (S.D.N.Y. 2013) ............................................................................... 9

*Crescenz v. Penguin Grp. (USA) Inc.*,
    Civil No. 11-0493 (NLH)(AMD), 2012 WL 6761817 (D.N.J. Dec. 31, 2012) .................. 5

*Leigh Co. v. Bank of N.Y.*,
    617 F. Supp. 147 (S.D.N.Y. 1985) .................................................................................... 3

*Marx & Co., Inc. v. Diners' Club Inc.*,
    550 F.2d 505 (2d Cir. 1977) .............................................................................................. 6

*Metavante Corp. v. Emigrant Sav. Bank*,
    619 F.3d 748 (7th Cir. 2010) ............................................................................................ 4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    691 F. Supp. 2d 448 (S.D.N.Y. 2010) ............................................................................... 6

*Pivnick v. White, Getgey & Meyer Co., LPA*,
    552 F.3d 479 (6th Cir. 2009) ............................................................................................ 4

*U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*,
    Civ. No. 2:10-5011 (KM), 2013 WL 1792463 (D.N.J. Apr. 26, 2013) ............................. 5

*U.S. Energy Sys. Inc. v. Enviro Partners, L.P.*,
    No. 97 CIV. 1748(JFK), 1999 WL 123806 (S.D.N.Y. Mar. 8, 1999) ............................... 9

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002) ............................................................................. 10

**State Case**

*Manhattan Med. Diagnostic & Rehab., P.C. v. Wachovia Bank, N.A.*,
    57 N.Y.S.2d 55 (1st Dep't 2008) ...................................................................................... 3

**Federal Rule**

Fed. R. Evid. 702 ........................................................................................................................... 5

**PRELIMINARY STATEMENT**

Healey's opposition is most notable for what it does <u>not</u> say. Healey does not identify the process that it contends RBC should have used to calculate Final Valuation Price and comply with the Call Option Agreement. Healey does not point to any expert witness evidence showing that RBC's methodology was "commercially unreasonable" or inconsistent with custom and practice in the fund-linked derivatives industry. Healey does not and cannot point to a single instance in which RBC removed a fund from the Basket by conducting an auction or sale, by hiring a valuation expert, or by using a pricing model. And Healey does not and cannot point to a single instance during the entire life of the Call Option in which it instructed RBC to pay Healey the estimated value of a hedge fund as reflected in a monthly Basket Report.

Instead, Healey falls back on the unsupported allegations in its Amended Complaint, it rehashes arguments this Court has repeatedly rejected, it uses "fact issue" rhetoric without pointing to evidence in the record, and it mischaracterizes documents and testimony to create the appearance of disputes.[1] This Court should reject these tactics for several reasons.

<u>First</u>, Healey's assertion that there is conflicting expert evidence on the issue of "commercial reasonableness" cannot be reconciled with the actual text of the reports and deposition testimony. The record shows that Shane Gadbaw, RBC's expert, is a founder of the fund-linked derivatives industry who opined that RBC's methodology was commercially reasonable because it was consistent with industry custom and practice. Healey's witness, Peter

---

[1] For example, Healey has long claimed that the parties' contract obligated RBC to pay the estimated value of the Call Option shown on the September 2008 Basket Report. In a ruling on RBC's motion to dismiss, and again in a supplemental opinion issued after an all-day mediation, this Court held that Healey was not entitled to the September 2008 Basket Report amount as a matter of law. See ECF Nos. 37 at 3; 43 at 13-15. In its opposition, Healey again ignores the Court and argues for the September 2008 Basket Report amount. Healey Opp. at 2 ("RBC made these final valuations as indicated on the September 2008 Basket Report, but did not convert the funds to cash and pay Healey.").

Berlant, admitted in his deposition to having no relevant expertise and opined only on the amount of certain payments that RBC made to Healey. This is not a case of dueling expert opinions; Healey has nothing to submit to the jury on the issue of commercial reasonableness.

Second, nothing in Healey's opposition papers in any way rebuts RBC's showing that the parties followed a uniform course of conduct during the life of the Call Option. Healey does not identify one instance in which the parties did anything other than follow the ordinary hedge fund redemption process. As such, there is no disputed issue of fact as to the meaning of Final Valuation Price, or with respect to whether Healey's claims are barred under the doctrines of quasi-estoppel, waiver, equitable estoppel, and ratification.

Indeed, the only "evidence" that Healey cites is self-serving deposition testimony by Messrs. Healey and Nepa suggesting that, after a pre-signing sales meeting with RBC, they personally concluded in some general sense that the Call Option was liquid and that they could add and remove funds instantaneously. Such testimony does not create a triable issue of fact because: (i) the testimony is directly contrary to the contract documents that Messrs. Healey and Nepa signed;[2] (ii) the contract's merger clause precludes reliance on any pre-contract statements, and (iii) uncommunicated statements of contractual intent are irrelevant under New York law.

Finally, Healey spends much of its opposition simply rehashing the allegation that its entire investment was "deemed" or "hypothetical" while making other similar claims that this Court rejected in several opinions. Summary judgment should be granted because Healey never points to any testimony or correspondence in the record supporting its allegations, and it gives no reason why the Court should revisit prior rulings.

---

[2] *See, e.g.*, Ex. 22 (Risk Disclosure) at ¶ 3 ("**[T]he transaction is ILLIQUID and it may be impossible for Buyer to sell, assign or transfer the [Call Option] to any person for value prior to the scheduled expiration date [November 30, 2017].**") (emphasis in original).

# ARGUMENT

**I.     HEALEY'S OPPOSITION CONFIRMS THAT THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE ISSUE OF COMMERCIAL REASONABLENESS.**

In its moving papers, RBC cited to uncontradicted expert testimony concluding that RBC's process for determining Final Valuation Price was the same process used by all sellers of fund-linked derivatives and therefore was commercially reasonable. *See* RBC Mov. Br. at 20-26. In its opposition, Healey argues that (i) commercial reasonableness cannot be decided as a matter of law; (ii) RBC's expert failed to conduct a "survey;" and (iii) Healey's auditor has expertise in reading contracts and as such should be permitted to opine on commercial reasonableness. Healey Opp. at 10-11, 14-16. None of these arguments has merit.

**A.     Commercial Reasonableness Can Be Decided as a Matter of Law.**

Contrary to Healey's assertion, it is well-settled that commercial reasonableness is an appropriate issue for summary judgment where, as here, there is no genuine dispute as to the material facts. *See, e.g., Leigh Co. v. Bank of N.Y.*, 617 F. Supp. 147, 153 (S.D.N.Y. 1985) (granting summary judgment and finding as a matter of law that bank acted in a reasonable manner); *Bankers Trust Co. v. Dowler & Co.*, 47 N.Y.2d 128, 137 (1970) (granting summary judgment on commercial reasonableness because "after eliminating conclusory and irrelevant allegations, the undisputed facts and irrefutable documentary evidence . . . make it manifest that there could be no realistic expectation that the [non-moving party] would succeed in obtaining a factual or legal determination in its favor."); *Manhattan Med. Diagnostic & Rehab., P.C. v. Wachovia Bank, N.A.*, 857 N.Y.S.2d 55, 55 (1st Dep't 2008).[3]

---

[3]     The non-New York case law cited by Healey supports RBC's position that commercial reasonableness can be decided as a matter of law where, as here, the evidence is one-sided. *See Barco Urban Renewal Corp. v. Hous. Auth. of Atlantic City*, 674 F.2d 1001, 1008 (3d Cir. 1982) (holding that "when extrinsic evidence is introduced in aid of . . . interpretation . . . the question becomes one of fact . . . *unless the evidence and resulting inferences are uncontroverted*")

3

B.  **RBC Provided the Only Evidence of Industry Custom and Practice.**

Mr. Gadbaw is a pioneer and expert in the hedge fund-linked derivatives industry and a former competitor of RBC. He testified that, in his experience, the only methodology used in this industry to determine final value was to submit a redemption notice, wait until the redemption request was honored by the hedge fund, and then use that information to calculate the amount due to the derivative investor.[4] *See* Gadbaw Aff., Ex. 1 at ¶¶ 33-34, 44-46, 53, 58. This is the same methodology that RBC used during the life of the Call Option. Mr. Gadbaw further explained that it is standard in the industry for a call option counterparty, like Healey, to be subject to an underlying fund's liquidity restrictions, and that a counterparty must wait until all such restrictions are resolved before it received the proceeds of a removal. *See id.* at ¶¶ 49-51, 57-58, 69-72. As such, Mr. Gadbaw explained, it is common for hedge fund investors (direct or derivative) to wait years for funds to liquidate, particularly in times of economic distress. *See id.*

Healey does not dispute these findings or Mr. Gadbaw's status as an expert. Instead, Healey suggests that summary judgment should be denied because Mr. Gadbaw did not conduct a "survey" in preparing his report. Healey Opp. at 16. Mr. Gadbaw, however, made it his business to know the details of similar products being sold by other institutions in order to stay competitive in the industry. Ex. 57 (Gadbaw Dep.) at 157:7-159:2. It is beyond dispute that the

---

(emphasis added); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 763 (7th Cir. 2010) (citing Wisconsin case law that notes that, based on the record, commercial reasonableness can be a question of law); *Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 484-85 (6th Cir. 2009) (applying to Kentucky law but recognizing that other jurisdictions allow commercial reasonableness to be decided as a matter of law).

[4]  Healey glibly refers this process as "you get paid when we get paid." Healey Opp. at 1. As RBC has explained repeatedly, this is not and has never been its position. Sellers of fund-linked derivative products make payment when a redemption request is honored because that is the only point in time when the true value of a hedge fund investment is known. NAV calculations are just estimates of value and do not necessarily reflect the value that will be received by a redeeming investor. Gadbaw Aff., Ex. 1 at ¶¶ 44-46, 53, 58, 76-78.

basis for an expert's opinion may be his experience in the relevant industry. *See Crescenz v. Penguin Grp. (USA) Inc.*, Civil No. 11-0493 (NLH) (AMD), 2012 WL 6761817, at *5-6 (D.N.J. Dec. 31, 2012) (granting summary judgment where, among other things, defendant provided two experts with experience in the book selling and publishing who opined on custom and practice in the publishing industry); *see also U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*, Civ. No. 2:10-5011 (KM), 2013 WL 1792463, at *10 (D.N.J. Apr. 26, 2013) (expert opinion was "grounded in his experience in the industry"); Fed. R. Evid. 702 (noting that a witness can be qualified as an expert by "knowledge, skill, experience, training, or education").

Healey's case boils down to the simple assertion that "this has taken too long." *See generally* Healey Opp. at 1, 7, 9, 11, 13. Aside from not being evidence, this assertion ignores the critical fact that Healey has substantially benefitted from the passage of time. As of the June 2009 Termination Date, the estimated value of the Call Option was $11,409,495. Ex. 54 (June 2009 Basket Report); Spacek Aff., ¶ 31. To date, RBC's methodology has resulted in payments to Healey totaling $12,373,800, and the funds remaining in the Basket are estimated at $875,000.

C.   **Healey Cannot Rehabilitate Its Expert.**

In its moving papers, RBC demonstrated that Healey's proffered expert, Mr. Berlant, failed to give an opinion as to commercial reasonableness, and indeed, that he was unqualified to do so. Healey accuses RBC of "attacks" on Mr. Berlant and "asking this Court to make a credibility determination . . . regarding Healey's expert." Healey Opp. at 14. Mr. Berlant admitted in his deposition that: (i) he is not an expert in fund-linked derivatives; (ii) he has no expertise in call option agreements; (iii) he has never been a buyer or seller, or an auditor of a buyer or seller, of fund-linked derivatives; (iv) he has never given any speeches or written any treatises, books, or articles about fund-linked derivatives; and (v) he has never given expert opinions in litigations concerning fund-linked derivatives. *See* Exs. 58 (Berlant Dep.) at 24:15-

5

26:22, 97:5-22; 48 (Berlant Dep.) 46:22-47:3, 47:15-19. As Mr. Berlant admits he has no expertise in the relevant industry and thus no basis to opine on commercial reasonableness, the Court need not make any credibility determinations and summary judgment is appropriate.

Faced with Mr. Berlant's own admission that he is not an expert in the fund-linked derivatives, Healey argues that he is an expert in "looking at agreements and understanding SWAPs." Healey Opp. at 15. Contract interpretation, however, is the province of courts and not expert witnesses. *See Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977) (finding that the district court erred in permitting an expert witness to give his opinion about "the legal obligations of the parties under a contract"); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 476 (S.D.N.Y. 2010) (holding that expert testimony on a party's contractual duties is inadmissible "because it improperly usurps the role of the trial judge . . . and the role of the jury").

Mr. Berlant's purported expertise in audit and swap agreements is similarly irrelevant. Healey Opp. at 15. This case does not concern auditing standards or require audit trail tracing payments from hedge funds to RBC to Healey. Nor does this case concern swap agreements.

Qualifications aside, Mr. Berlant also failed to even opine on the issue of commercial reasonableness. He did not discuss the methodology that RBC should have used to determine Final Valuation Price or Final Option Value. Nor did he address the methodology used by other sellers of fund-linked derivatives. He did not identify any ground on which a fact-finder could conclude that RBC's chosen methodology was commercially unreasonable. Instead, Mr. Berlant states, without support or explanation, that RBC's position is "unreasonable," and then proceeds to conduct an unrelated analysis to determine whether RBC calculated correctly certain specific payments made to Healey. *See* Ex. 51 (Berlant Rpt.) at ¶¶ 25-29.

## II.   HEALEY CONFIRMS THE PARTIES' COURSE OF CONDUCT.

RBC established in its moving papers that Healey removed funds from the Basket on hundreds of occasions during the life of the Call Option, and that the parties uniformly followed the ordinary hedge fund redemption process, thereby resolving any ambiguity in the meaning of Final Valuation Price. *See* RBC Mov. Br. at 23-26. In its opposition, Healey failed to identify any evidence suggesting that the parties followed a different process or that the parties' course of conduct somehow varied. Instead, Healey argues that (a) a uniform course of conduct over six years is not relevant, and (b) Healey executives had a subjective intent that was different from the parties' course of conduct. These baseless arguments cannot defeat summary judgment.

### A.   Healey Does Not Dispute that the Parties Uniformly Used the Ordinary Redemption Process to Redeem Funds from the Basket.

All of the evidence before the Court shows that the parties followed a single, consistent course of dealing whenever Healey sought to remove a fund from its Basket. *See* RBC Mov. Br. at 23-26. The documents demonstrate this, the fact witnesses testified to this, and the experts confirm this. *See generally* Ex. 33 (Redemption Summary Chart); RBC Mov. Br. at 19, 23-26 (citing deposition testimony from Messrs. Kaul, Hickey, and Quinn); Spacek Aff., ¶ 17; Gadbaw Aff., Ex. 1 (Gadbaw Rpt.) at ¶¶ 32-35, 44-51; Ex. 48 (Berlant Dep.) at 40:1-15, 41:1-19, 73:4-10, 79:5-22; Ex. 51 (Berlant Rpt.) at Ex. I.

Healey has not identified a single removal that occurred in any manner other than the ordinary redemption process, nor has it put forth any document or deposition testimony indicating that during the life of the Call Option, any Healey employee or agent requested RBC deviate from the ordinary redemption process (by, for example, requesting to be paid the amount indicated on a monthly Basket Report, or to determine the value of the Call Option by means of model, valuation expert, auction, or otherwise). It simply never happened.

7

Healey attempts to avoid the overwhelmingly one-sided evidence by arguing that the parties' consistent course of conduct is "not necessarily relevant" and that the process to determine Final Valuation Price for a hedge fund at termination is different than the process for valuing a hedge fund for an ordinary, pre-termination removal from the Basket. *See* Healey Opp. at 18. First, in its September 2008 e-mail, Healey requests removal of the funds from the Basket, not a termination of the Call Option. Second, Healey's own expert concluded that the removal process was the same regardless of whether the redemption was made at or prior to termination:

> [RBC's] valuation process, which is what they have historically been doing on partial withdrawals, full withdrawals, basket changes, whatever you want to call them, **they have historically been using a consistent methodology wherein they rely on the underlying values by the managers**. And I'm saying that what happened September 19th . . . whether you call it a termination or not, **nothing changed** . . . The valuation of the . . . presumed underlying investments is still based upon what it's always been based upon . . .

Ex. 58 (Berlant Dep.) at 107:13-108:13 (emphasis added). The parties' consistent course of conduct is entirely relevant in (a) interpreting the meaning of Final Valuation Price, and (b) barring Healey's claims under the doctrines of quasi-estoppel, waiver, equitable estoppel, and ratification. *See* RBC Mov. Br. at 23, 27-28.

**B.     Healey's Purported Fact Issues Are Meaningless as a Matter of Law.**

Faced with no evidence on commercial reasonableness and a uniform course of conduct, Healey attempts to gin up fact issues with misleading "evidence." First, Healey challenges RBC's evidence showing that Healey knew and understood that it was to be treated as a direct investor in the hedge funds with the same liquidity risks, and that any liquidity restriction imposed by a fund was applicable to Healey and its Basket. Healey Opp. at 20. RBC's evidence consists of contemporaneous correspondence between the parties showing that Healey expected to be treated like a direct investor in the underlying hedge funds, and the testimony of Healey's own former employees who were tasked with managing the Call Option.

8

Healey attempts to create a fact issue based on testimony from Mr. Healey and Mr. Nepa suggesting they did not intend to be treated like direct investors and understood they could redeem the investment on short notice (without ever communicating such "intent" to RBC at any time during the life of Call Option). *Id.* at 21. New York law, however, provides that in deciding a summary judgment motion, "it is inappropriate for a court to consider unexpressed subjective intent evidence." *U.S. Energy Sys., Inc. v. Enviro Partners, L.P.*, No. 97 CIV. 1748(JFK), 1999 WL 123806, at *8 (S.D.N.Y. Mar. 8, 1999); *see also Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 957 F. Supp. 2d 316, 341 (S.D.N.Y. 2013) (noting that "courts typically do not consider, or assign little weight to," statements of "subjective intent that [a party] did not communicate to the other party at the time of the drafting"). Messrs. Nepa's and Healey's statements about their subjective, undisclosed intent as to the Call Option Agreement are inadmissible and cannot raise a triable issue of fact.

Next, Healey attempts to dispute that the monthly Basket Reports were estimates of the Basket's value and not a representation as to the amount a redeeming investor would actually recceive. The contradictory evidence, according to Healey, is again testimony from Mr. Healey and Mr. Nepa suggesting that they were told, prior to entering into the Agreement, that the NAVs were considered final when an asterisk was added to the Basket Reports. Healey Opp. at 21. Setting aside the fact that every Basket Report contained a disclaimer directly contradicting Healey's interpretation,[5] Healey's reliance on pre-contractual discussions cannot create a fact issue because the Call Option Agreement provides that the Agreement "constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all

---

[5] Every Basket Report states that the data provided is "for information purposes only," that RBC has not "independently verified the accuracy of the information," and that the values reported by the funds are "likely to be materially different" from the values determined by RBC. *See, e.g.*, Ex. 31 (June 2013 Basket Report); Ex. 32 (June 2013 Valuation Report).

9

oral communications and prior writings with respect thereto."[6]  Under New York law, a merger clause renders "the parties' negotiations before the execution of [an agreement] . . . irrelevant." *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 496-97 (S.D.N.Y. 2002).

Finally, Healey attempts to dispute RBC's showing that after Healey made a request to remove a fund from its Basket, RBC necessarily had to wait for the fund to pay the redemption request in order to use that information to determine the amount to credit to Healey.  Healey Opp. at 21-22.  Healey argues that the "only evidence cited for this proposition is the deposition testimony by former Viking employees, Messrs. Kaul, Hickey, and Quinn, who cannot provide competent evidence regarding what *RBC* did or did not do." *Id*.  In addition to the Viking employees, however, RBC's fact witnesses and *both* experts testified to this.  *See, e.g.*, Spacek Aff. at ¶ 17; Gadbaw Aff., Ex. 1 (Gadbaw Rpt.) at ¶¶ 51, 71-72, 83; Exs. 48 (Berlant Dep.) at 40:1-15, 41:1-19, 73:4-10, 79:5-22; 58 (Berlant Dep.) at 107:13-108:13; Ex. 51 (Berlant Rpt.) at Ex. I.  Moreover, the Viking testimony is not relied upon to prove the functional steps RBC took to redeem, but instead to evidence Healey's understanding of the Call Option Agreement.

### III.   HEALEY CANNOT CONTINUE TO IGNORE THE COURT'S PRIOR RULINGS.

Unable to find disputed material facts in the record, Healey rehashes arguments that this Court has rejected on numerous occasions.  First, the Court held in its Supplemental Opinion that Healey's claims are moot as to the hedge funds for which RBC has already determined Final Valuation Price.  The court reasoned that "the only claim this Court permitted to go forward was based on a failure to make final valuation determinations and not based on an improper final valuation determination," and that "assuming Defendants mirrored Plaintiff's investment decisions and produced final valuations using the amounts they actually recovered, the amounts

---

[6]   *See* Exs. 23 (Call Option Agreement) at 1-2; 59 (Form 1992 ISDA Master Agreement) at § 9.

they recovered would, by definition, capture the amounts that actually would be redeemed by an actual investor." *See* Supp. Op., ECF No. 87, at 4 n.3 (emphasis in original). Healey ignores this ruling, arguing that RBC "failed to properly calculate the Final Valuation Price as per the Agreement," and that "all payments need to be considered to determine Healey's damages." Healey Opp. at 26. Healey does not, however, dispute that RBC mirrored Healey's investments on a dollar-for-dollar basis, *see* Healey's Responses to RBC's Rule 56.1 Statement, at ¶¶ 69, 87, or that RBC in fact paid Healey on the basis of the dollar amounts that RBC itself received from the underlying hedge funds.[7]

<span style="text-decoration: underline;">Second</span>, this Court previously ruled that Healey was not entitled to the September 2008 Basket Report value . Supp. Op., ECF No. 87, at 3 ("Plaintiff had failed to plausibly state a claim that it was entitled to the valuations within the September 2008 basket report, since that report consisted of estimates of then-existing valuation of the hedge funds and would be stale by the time a hypothetical investor with Plaintiff's positions would actually have its investment redeemed."). Healey ignores the Court's holding, arguing throughout its opposition that it is entitled to the value on the September 2008 Basket Report. *See* Healey Opp. at 2, 6, 13.[8]

---

[7]   Healey repeatedly complains in its opposition about how it has been "damaged" by having to pay RBC's fees. *See* Healey Opp. at 27. There are no allegations in the Amended Complaint suggesting that RBC charged improper fees; these fee complaints cannot defeat summary judgment. As an aside, RBC has not as Healey suggests charged $2 million in fees since termination. The actual total is a fraction of that amount.

[8] 

<u>Third</u>, Healey ignores the distinctions this Court has made already among the defined terms in the Agreement. *See, e.g.,* Healey Opp. at 6-7. The Court concluded that RBC was "correct that pursuant to the Agreement the interim Option Value is not the Final Option Value," noting that interim Option Value is an "estimated value" and that Final Option Value "should be determined as the amount a hypothetical investor would actually receive upon fully liquidating the investments." MTD Op., ECF No. 23, at 10. Healey's continued assertion of these settled issues is not only irrelevant to summary judgment, but also a waste of judicial resources.

## CONCLUSION

RBC respectfully requests that the Court grant its motion for summary judgment and dismiss Healey's Amended Complaint with prejudice.

Dated:  New York, New York
        August 8, 2014

                                    **KATTEN MUCHIN ROSENMAN LLP**

                                    By:  _____
                                         Scott A. Resnik
                                         William M. Regan
                                         Bruce G. Vanyo
                                         Allison M. Wuertz

                                         575 Madison Avenue
                                         New York, New York 10022-2585
                                         (212) 940-8800 (phone)
                                         (212) 940-8776 (fax)

                                    *Attorneys for RBC Capital Markets, LLC*